## The Mihills Manufacturing Company vs. Camp, Trustee, etc., and another.

*March 16 — March 30, 1880.*

EQUITY: CORPORATIONS. *(1) When corporation affected by individual acts and knowledge of its officers. (2) Equitable conditions of equitable relief.*

1. P. and B., president and treasurer of the plaintiff company, but claiming to act *as individuals*, bought and owned a certificate of a first-mortgage sale of real estate, including lands to which the company had acquired the mortgagor's title; and they executed to the company a release of its said lands from that sale. Afterwards C., who, as trustee of certain creditors of the mortgagor, held a *second* mortgage, including plaintiff's said land, and prior to plaintiff's title, applied to P. and B. to purchase said certificate of sale, to protect the interests of his *cestui-que-trusts;* and P. and B., claiming still to own the certificate, refused to sell it to him, but concealed from him the fact that they had released therefrom to plaintiff its said lands; and they allowed C. to pay to the sheriff a large sum of money to redeem from the first-mortgage sale the lands thereby sold, knowing that he designed thereby to redeem the lands of the company covered by his mortgage, and was ignorant of the release before mentioned. The moneys thus paid to the sheriff were by him paid over to one H., to whom P. and B. had transferred the certificate of sale by a special assignment excepting the released premises. *Held*, that P. and B., in the transactions with C., *were under a duty, as officers of the plaintiff company*, to disclose the facts which would have prevented C. from paying said moneys to the sheriff for a fruitless redemption; and that their fraudulent concealment estops the company from claiming the benefit of such release.

2. C. having, after such redemption, taken a sheriff's deed of the lands, based upon the certificate of the first-mortgage sale, and this action being brought to have such deed cancelled as to plaintiff's said lands: *Held*, that the complaint should be dismissed unless plaintiff, within a time specified, repay to C. the amount paid by him for such redemption, with interest.

APPEAL from the Circuit Court for *Fond du Lac* County. Sec. 1, ch. 195, Laws of 1859, provided that, in case of a sale of mortgaged lands under a judgment of foreclosure, it

should be the duty of the sheriff or other officer making the sale, within ten days thereafter, to execute to the purchaser a certificate of sale in writing, under seal, setting forth each tract or parcel of the lands sold, the sum paid therefor, and the time when the purchaser would be entitled to a deed thereof unless the land should be redeemed as afterwards provided in the act; and such officer was also required, within ten days after the sale, to file in the office where the mortgage was recorded, a duplicate of such certificate, signed by him.

Sec. 2. of the act provided, that it should be lawful for the mortgagor, his heirs, personal representatives or assigns, at any time within one year after the sale, to redeem such lands, or any distinct tract or parcel thereof separately sold, by paying to the purchaser, his personal representatives or assigns, or to the officer making the sale or his successor in office, the sum of money for which the same was sold, with interest at the rate of ten per cent. per annum from the date of sale; that thereupon the sale and certificate should become void; that the bail of such officer should be responsible for the full payment to the purchaser or his legal representatives of all moneys so received by such officer; and that the officer should execute to the person so redeeming a certificate under seal of the fact of such redemption, which should operate as a discharge of the mortgage and of all right, title and interest acquired by the purchaser at the sale, and should vest the title of the lands redeemed in the person lawfully entitled to the same.

Sec. 3 of the act provided, that if, after the expiration of a year from the sale, it should appear that no person authorized so to do had redeemed the premises or any portion thereof as aforesaid, it should be the duty of the officer making the sale, or his successor in office, to execute to the purchaser deeds of the lands sold, etc.

Sec. 4 of the act provided, that any person holding " a sub-

sequent mortgage or other incumbrance on the premises sold, or any separate parcel or lot thereof," should be " entitled to the same privileges of the redemption of the mortgaged premises that the mortgagor or his legal representatives might have had, or of satisfying the prior mortgage;" and that he should, " by such satisfaction, acquire all the benefits to which such prior mortgagee was or might have been entitled."

Sec. 1, ch. 92 of 1872, amended this section by adding that any person who might have a lien on the premises sold, or any separate lot or parcel thereof, at any time before the expiration of a year after the sale, subsequent to the lien of the mortgage foreclosed, might acquire the interest of the original purchaser at such sale, by paying within said year the sum of money paid by such purchaser for the said premises, or for such separate lot or parcel thereof as might be covered by his lien, if separately sold, with interest at ten per cent. per annum from the time of sale; that such interest might be acquired and such payment made in the manner and with the effect provided for acquiring rights of purchasers under excution sales, in ch. 134, R. S. 1858, and the acts amendatory thereto; and that the interests so acquired might be again acquired by other holders of like liens, in like manner and with like effect as provided for in said ch. 134, R. S. 1858:[1] *provided*, that in case of liens other than those created

[1] Without attempting to give at length the provisions here referred to, it may be sufficient to state that they authorized redemption from an execution sale of land, or of any distinct parcel thereof separately sold, to be made by the execution debtor, his devisee or heirs-at-law, or any grantee who should have acquired an absolute title by deed, sale under mortgage or execution, or by any other means, to the premises sold or to any such distinct parcel separately sold; and upon payment of the sum required, by a person entitled to redeem, the sale and certificate, as to the premises redeemed, became void. It was then further provided that, in case the persons entitled to redeem as aforesaid should omit to redeem within two years, then the interest of the purchaser might be acquired within three months after the expiration of such two years, by the persons and on the terms afterwards prescribed. It was then provided that any person having a judgment lien on

by judgments for moneys only, a certified copy of the judgment or instrument showing such lien should be presented to and left with the officer or purchaser, together with a copy of all the assignments thereof, verified by affidavit, and an affidavit of the holder of such lien, his attorney or agent, stating as near as might be the true sum secured by and owing thereon, at the time of claiming such right to purchase. There was also a provision in said sec. 1 of the act of 1872, that nothing therein contained should impair the right to redeem said premises under secs. 2 and 4 of the aforesaid act of 1859. There was a further provision, that the person who, having acquired the purchaser's interest, should be the holder thereof at the expiration of said year, should be entitled to a conveyance of the premises, or of the portion thereof held by him, which should be executed by the officer, and should have the effect prescribed in section 3 above recited.

This was an action to have a sheriff's deed of certain lots in the city of Fond du Lac, executed by the sheriff of Fond du Lac county, December 15, 1876, to the defendant *Hoel H. Camp*, as trustee for John Forshee, George T. Bryant and others, declared null and void, and cancelled of record, or to have said grantee decreed to quit-claim and release to the plaintiff the lands included in said deed.

The findings of fact by the circuit court were substantially as follows:

the premises, or any parcel thereof separately sold on the foreclosure, might acquire the rights of such purchaser therein, by paying the amount paid therefor by such purchaser, with interest, etc.; and that then a second like creditor might become a purchaser from such first creditor, by (1) reimbursing to such first creditor the sum so paid to the original purchaser; and (2) paying such first creditor the amount of his judgment, provided such judgment, when the first creditor became the purchaser, was a lien prior to the judgment of such second creditor. Like provision was made for a third creditor becoming a purchaser from the second, and so on indefinitely; and the statute provided what evidence the purchasing creditor should present to and leave with the original purchaser, or prior purchasing creditor, or the officer who made the sale. R. S. 1858, ch. 134, secs. 55–69.

1. The plaintiff is, and has been since November 4, 1874, a corporation engaged in carrying on, at the city of Fond du Lac, the business of lumbering, logging, manufacturing logs, lumber, shingles, sash, doors and blinds, and selling the same; and, for the purposes of such business, has owned and used, from the date aforesaid, *and now owns in fee,* five lots numbered from six (6) to eleven (11), and lots 47, 55 and 56, in block 12 of the original plat of said city.    [This is the property here in dispute.]

2. On the 4th of October, 1871, before plaintiffs acquired title to said lands, Uriah D. Mihills and Guindon N. Mihills, being then the owners in fee, executed to one Merrick and one Stickney a mortgage of said premises, with other lands belonging to Uriah D. Mihills and situate in Sheboygan county.  On the 5th of August, 1873, these Sheboygan county lands *were sold for $3,000, and conveyed by Uriah D. Mihills to one Marsh,* who assumed to pay, as part of the purchase price, the above mentioned mortgage to Merrick and Stickney; and the premises so conveyed to Marsh *were reasonably worth the amount of the mortgage so assumed.*

3. After said sale and conveyance to Marsh, plaintiff, *with knowledge thereof, and relying upon Marsh's agreement to pay the Merrick and Stickney mortgage,* purchased for full value, from Uriah D. and Guindon N. Mihills, the Fond du Lac property first above described.

4. On the 2d of December, 1873, Uriah D. and Guindon N. Mihills, with their wives, executed to the defendant *Hoel H. Camp,* as trustee, etc., a mortgage dated December 22, 1873, to secure the following notes, all dated December 1, 1873, and due January 1, 1875, with annual interest at ten per cent., made by said mortgagors, by the description of U. D. Mihills & Co., for value, to wit:  One to John Forshee for $1,000; one to George T. Bryant for $4,000; one to Booth, Hunneman & Co., for $1,000;  one to Irving M. Bean, for $1,500;  one to J. F. Brewster, for $1,000;  one to S. M. Curtis, for $1,200;

one to F. S. Blodgett, for $1,000; and one to A. Stevely, for $3,000. The mortgage was made to *Camp* as trustee, for the payees of said notes, ratably; and it included lots 7, 8, 9, 10, 46, 47, 55 and 56, in block 12, of the original plat of Fond du Lac above mentioned, and also certain lands situate in Marathon county. This mortgage was duly recorded in Fond du Lac county, December 31, 1873.

5. No part of the mortgage to Merrick and Stickney having been paid, said mortgage was foreclosed (by one Partridge, the assignee thereof) in an action commenced July 14, 1875, in which the present plaintiff and the defendant *Camp*, as trustee, etc., were joined with others as defendants; and on the 11th of December, 1875, the whole of the mortgaged premises were duly sold by the sheriff to one Elihu Colman for $5,867.30, and proper certificates of the sale were delivered and filed.

6. On the 3d of February, 1876, Elihu Colman sold, transferred and assigned the certificate of the above mentioned sale, by an instrument entitled to record, to Colwert K. Pier and Robert A. Baker, each taking an equal undivided half thereof. *On the 13th of March, 1876, said Pier and Baker,* then being the owners of said certificate, by an instrument dated on that day and entitled to record, *released the Fond du Lac property described in the first finding, from the lien of said certificate, and granted the same to the present plaintiff* "released and discharged of all charge, liability and claims, in equity or otherwise, by reason of the sale under the Merrick and Stickney mortgage, and of the judgment upon which it was made, and of the original mortgage foreclosed and the debt and moneys secured thereby." *Since the date of such release and conveyance,* the present plaintiff has retained said instrument as a muniment of title to the property, of which it then was and still is in the actual occupation.

7. The assignment from Colman to Baker and Pier was recorded in the registry of deeds of Fond du Lac county on the 11th of December, 1876, at 8¾ o'clock A. M.; and the

release to this plaintiff from Baker and Pier was recorded in the same office on the same day at 4⅓ o'clock P. M.

8. On the 3d of October, 1876, the certificate of sale so assigned to Pier and Baker was, by an instrument in writing indorsed thereon, assigned to one Henry M. Hamilton, *who resided at Mankato, Minnesota, and was engaged in the business of banking at that place;* but this assignment in terms " excepted from the lien of the certificate and the judgment under which it issued, the lands therein described which are situate in the city of Fond du Lac, Wis., and which have been formerly released therefrom," which exception included the lands here in controversy.

9. The defendant *Camp,* as trustee, etc., on the 11th of December, 1876, at the office of his co-defendant *Hill,* sheriff of Fond du Lac county, in the city of Fond du Lac, presented to and left with said sheriff a certified copy of the mortgage executed to him by Uriah D. and Guindon N. Mihills (described in the fourth finding), with an affidavit alleging that said *Camp,* as trustee, etc., had and claimed an interest in and lien on so much of the mortgaged premises sold to Elihu Colman as are described in the first finding, and that he had and claimed such interest and lien under the mortgage described in the fourth finding, and alleging also that there was due on said mortgage to him as trustee $13,902.84, and that by reason thereof he had a right to redeem said premises from the sale made to Colman; and at the same time he paid said sheriff $6,454.03, the amount for which said premises were purchased by Colman, with interest thereon at ten per cent. per annum from the date of the sale; and at the same time said sheriff executed under his hand and seal and delivered to said Camp, as trustee, etc., a certificate reciting the facts stated in this finding.

10. On the 12th of December, 1876, Henry M. Hamilton presented to Sheriff *Hill* the original certificate of the sale made to Elihu Colman, with the assignments thereon above described,

and demanded the money paid thereon by *Camp*, as trustee, etc., as stated in the preceding finding; and the sheriff thereupon paid said money to said Hamilton, who surrendered the certificate with the assignments to said sheriff, and executed to him a receipt of the money so paid, which was attached to the surrendered certificate.

11. On the 15th of December, 1876, the sheriff executed to *Camp*, as trustee, etc., a sheriff's deed running to the latter, of all the premises described in the original certificate of sale to Elihu Colman. This deed recited the alleged redemption of the premises by the grantee, and that by virtue of such redemption he was entitled to a conveyance of the premises on the foreclosure sale; and it was duly recorded December 16, 1876, in Fond du Lac county.

12. Robert A. Baker and Colwert K. Pier, during all the times before mentioned, were officers of the plaintiff company, Baker being its president, and Pier its treasurer; "*but as such officers they, nor either of them, had any conversation or dealings with the defendant, as trustee, or with any of the* cestui-que-trusts, *or with any person or agent for or in their behalf, in relation to the Merrick and Stickney mortgage foreclosure, or to the sale made thereunder, or to the certificate of sale issued thereon; nor did they or either of them have any such conversation or dealing while they were in discharge of any business in connection with their official character, or with the official character of either of them, as officers of the plaintiff; nor were they or either of them, as such officer or representative of the plaintiff, applied to or on behalf of the defendant or his* cestui-que-trusts *in any matter having reference thereto.*"

13. The release from Baker and Pier to the plaintiff was in fact executed and delivered to plaintiff at its date, and was thereafter held and possessed by plaintiff in good faith as a muniment of title to its said property.

14. The assignment to Hamilton was in fact made and de-

livered at its date, for his own use and benefit, and was continuously thereafter possessed by him until he surrendered it to the sheriff as aforesaid.

15. No conspiracy or fraudulent and collusive combination was entered into between the plaintiff and Pier, Baker and Hamilton or either of them, or by Baker and Pier or either of them, as agents and officers of the plaintiff, with H. M. Hamilton or with any other person, for the purpose of injuring the defendant *Camp*, as trustee, etc., or his *cestui-que-trusts*, or either or any of them.

16. The premises covered by the certificate of sale to Colman, and remaining subject to the lien thereof at the date of the redemption by *Camp*, as trustee, etc., and of the sheriff's deed to him, are worth the sum paid by him for such redemption.

Upon these findings the circuit court held as conclusions of law:

1. That the release and discharge executed by Baker and Pier to the plaintiff (as described in the sixth finding), vested in plaintiff the title to the Fond du Lac property described in the first finding, discharged of all lien and claim by reason of the mortgage to Merrick and Stickney (described in the second finding), and of the judgment thereon and the sale made in pursuance thereof.

2. That *Camp*, as trustee, etc., paid the money to Sheriff *Hill* as a mere volunteer, and without any interest in the premises upon which the certificate of sale was a lien at the time of such payment; and that he "had constructive notice of plaintiff's right before payment, and actual notice before the payment of money upon the certificate, and before the execution of the deed to him."

3. That *Camp* never had any right of redemption at any time in lots 6 and 11 mentioned in the first finding.

4. That the sheriff's deed to *Camp* as trustee, etc. (described in the 11th finding), passed no title to any of the lots

described in the first finding; that the record thereof is a cloud upon plaintiff's title; and that plaintiff is entitled to have the same cancelled by judgment of the court, etc.

The defendant *Camp* excepted to the whole of the *last four findings of fact*, severally, and also excepted to those parts of the other findings which are indicated above by *italics*. He also excepted to the failure of the court to find the following facts:

1. That the instrument of release executed by Pier and Baker (described in the 6th finding above), was not made and delivered until after a certain redemption, or informal and attempted redemption, of the Fond du Lac property included in the Merrick and Stickney mortgage, from the certificate of sale thereon, which was made by George T. Bryant in behalf of said defendant as trustee, by paying to defendant *Hill* about $6,445 on December 6, 1877, nor until after knowledge of such transaction and attempted redemption had come to plaintiff's general officers.

2. That the assignment from Pier and Baker to Hamilton was never recorded in the register's office of Fond du Lac county, and was not in fact known to said defendant at the time of the transaction stated in the 9th finding, nor until after the delivery and recording of the sheriff's deed there mentioned.

3. That Pier and Baker, as officers of the plaintiff and in its behalf, in March, 1876, at the city of Milwaukee, made an agreement with George T. Bryant, acting for himself and the other *cestui-que-trusts* and said defendant, in consideration of the forbearance of payment of the amount due on the notes to them and the mortgage to said defendant, to pay interest thereon semi-annually, and $1,000 per month on account of the principal; that, as such officers and in plaintiff's behalf, in the months of August and December, 1876, and before the redemption by this defendant and the making and recording of the release mentioned in the 6th finding, they had certain

conversations with said George T. Bryant acting as above stated, in reference, among other things, to the Merrick and Stickney foreclosure and sale, and to the mortgage executed to said defendant *Camp*, as trustee, etc., and to the payment by plaintiff of interest and principal on said last named mortgage, and to the redemption by said defendant of the lands here in controversy from the Merrick and Stickney mortgage, sale and certificate; that in said conversations Pier and Baker did not communicate to said Bryant, or to said defendant through him, the alleged fact that the lands in controversy had been released in March previous from the lien of such certificate; that in such conversations Bryant was informed by Pier and Baker that they owned said certificate, and applied to them unsuccessfully for the purchase thereof from them; that Pier and Baker then and there concealed from said Bryant and this defendant and others interested the facts above stated, and never at any time afterwards informed this defendant, or any one interested, of the existence of such alleged release and its delivery; that said defendant and his *cestui-que-trusts* relied upon the statements of said officers, and were thereby led to suppose that said certificate remained a lien upon all the lands therein described, and in that belief prepared to make and did make the redemption found by the court as above stated, in good faith and in ignorance of the existence of said release, and supposing that such redemption was necessary to protect the mortgage to said defendant from a paramount absolute title through a sheriff's deed on said certificate; that said defendant, his *cestui-que-trusts* and agents, had no notice of said release until after the completion of said redemption, and no actual knowledge thereof until after payment of the redemption money to Hamilton, and delivery of the sheriff's deed to said defendant; and that by such concealment and failure to give correct information, said Pier and Baker, as plaintiff's officers, and plaintiff through them, misled the defendant and his *cestui-que-trusts* to their great in-

jury in the payment of said redemption money and the attendant expenses.

The defendant *Camp* also excepted to all the conclusions of law, and appealed from a judgment rendered for the plaintiff in accordance with those conclusions.

For the appellant there was a brief by *De Witt Davis* and *Charles E. Shepard*, and oral argument by *Mr. Davis.*[1] They contended, 1. That the sheriff's deed to *Camp* was effectual to convey to him a perfect legal title to the ten lots in Fond du Lac, notwithstanding the execution of the quit-claim deed or release by Baker and Pier to the plaintiff. (1) Under the statutes, a redeeming creditor acquires a right to a sheriff's deed, which vests in him the title of both mortgagor and mortgagee, subject *only* to the contingency that the mortgagor or his assigns or some subsequent creditor does not redeem within the year. Ch. 92 of 1872; Tay. Stats., 1701-2, §§ 3, 5. (2) The right of redemption by mere act of the parties is given by the statute, and can be exercised only as there prescribed. *Dickinson v. Hayes*, 1 N. W. Reporter, N. S., 834; *Lloyd v. Karnes*, 45 Ill., 62; *Moone v. Hopkins*, 9 Cent. L. J., 438; *Collins v. Riggs*, 14 Wall., 491. (3) The deed of quit-claim or release from Pier and Baker to plaintiff was not equivalent to a redemption by plaintiff. It was an instrument unknown to the statute, and could not defeat *Camp's* inchoate right to a deed. (4) Even if the assignment of the certificate of sale to a party entitled to redeem, or the execution to him of a deed by the owner of the certificate, were equivalent to a redemption, still there was no provision in the statutes at that time authorizing the redemption of one of several parcels of lands *sold together* at foreclosure sale, but only of parcels separately sold. (5) The deed of release vested in the plaintiff no greater interest, certainly, than plaintiff would

---

[1] Although the question of an equitable estoppel is the only one considered by the court in this case, it has been thought desirable to preserve an outline of the argument on the other questions discussed by counsel.— REP.

have acquired by an assignment to it of the whole certificate. But the taking of such an assignment would not have been an equivalent to a redemption. *Lloyd v. Karnes* and *Moone v. Hopkins, supra; McRoberts v. Conover*, 71 Ill., 524. Counsel distinguished *Miller v. Lewis*, 4 N. Y., 554, as entirely dissimilar in its facts. (6) *Camp's* right to a deed was fixed by his redemption at noon of December 11th. He was then in the position of a purchaser without notice, not bound to take notice of subsequent records, nor liable to have his right to a deed divested thereby. Rorer on Judicial Sales, §§ 1033, 1036; *Oviatt v. Brown*, 14 Ohio, 285; *Fallass v. Pierce*, 30 Wis., 443. Even had the release, or the qualified assignment of the certificate by Baker and Pier to Hamilton, been recorded prior to the redemption, it would not have affected appellant's right to redeem. Registration does not operate as constructive notice unless the instrument is one which the law requires to be recorded. 2 Hilliard on R. P., 430, note b; *McNeil v. Magee*, 5 Mason, 265 and note 15; *Gillig v. Maass*, 28 N. Y., 191. Neither the certificate of sale with its assignments nor an instrument in the nature of a redemption receipt is a " conveyance " within the meaning of the recording act. 2. That the concealment of material facts, and the statements made by the plaintiff's officers to Bryant, equitably estop the plaintiff from setting up the deed of release to defeat *Camp's* title. Bigelow on Estopp., ch. 18, pp. 431, 669; 2 Southern Law Rev., N. S., 644–660; *L'Amourevx v. Vandenburgh*, 7 Paige, 316; *Wendell v. Van Rensselaer*, 1 Johns. Ch., 344, 354; *Niven v. Belknap*, 2 Johns., 573; *Erie Co. Sav. Bank v. Roop*, 48 N. Y., 292; *Tilton v. Nelson*, 27 Barb., 595; *Hall v. Fisher*, 9 id., 17; *Mattoon v. Young*, 2 Hun, 559; *Shapley v. Rangeley*, 1 Woodb. & Min., 213; *Beardsley v. Foot*, 14 Ohio St., 414, 416. The doctrine of equitable estoppel applies to corporations in the same manner as to individuals. *N. E. Car-Spring Co. v. U. Ind. Rubber Co.*, 4 Blatchf., 1; *Zabriskie v. Railroad Co.*, 23 How., U. S., 400; *Hale v. U. M. F. Ins.*

*Co.*, 32 N. H., 299, and cases there cited; A. & A. on Corp., 233, 240. As the company necessarily acted through the very persons, as officers, who released to it as individuals, and who then concealed that fact, and as their knowledge is its knowledge, it cannot claim that it is relying on their deed in ignorance of their concealment and misrepresentation, and without responsibility for it. That would be a practical fraud. Kerr on F. & M., 195, 259, 262. Acts or declarations *in pais* of an agent, within the scope of his presumable authority, which would estop the agent were he the principal, will in like manner estop the principal. *Am. Ins. Co. v. Gallatin,* 48 Wis., 36. 3. That if the deed of release could have been effectual as a redemption of the Fond du Lac property, plaintiff was guilty of fraud in not placing it upon the record, or notifying *Camp* of its existence. Both plaintiff and *Camp* were parties to the foreclosure suit; and plaintiff knew that *Camp* would have to redeem in order to protect his mortgage, unless that became unnecessary through the acts of other parties. It also knew in March, 1876, that it would be unnecessary for *Camp* to redeem if the deed of release had the legal effect now claimed for it. It had notice in August, and again in September, of his intention to redeem. Common honesty and fair dealing would then have required it to give notice of the release. Even gross negligence may under certain circumstances amount to constructive fraud. *Henshaw v. Bissell,* 18 Wall., 271; *Taylor v. Ely,* 25 Conn., 250. And all the facts of the case go strongly to prove a fraudulent intent.

*S. U. Pinney,* for the respondent, argued, 1. That the release from Pier and Baker to plaintiff was an absolute bar to the right of any incumbrancer to redeem the premises. While the mortgagor, his representatives or assigns, may redeem, by virtue of the statute, without the consent of the owner of the certificate of sale, yet such owner may, by agreement with the mortgagor, his representatives or assigns, provide for extinguishing all rights created by the certificate, as to either a

part or the whole of the premises, upon such terms as he may choose. This right grows out of his ownership, and the statute does not attempt to restrict it. And before the sheriff's deed here in question was executed, the parties who claim to have made redemption had notice by registry of the release and assignment, and also by plaintiff's occupation of the premises; and they had also actual notice. Ch. 195 of 1859, providing for the redemption of premises sold on foreclosure, is substantially the same as the New York acts of 1837 and 1838 as construed by the courts of that state (*Augur v. Winslow*, Clarke's Ch., 258; *In re Willard*, 5 Wend., 95); and a creditor or incumbrancer could not redeem from the owner of the equity of redemption who had himself redeemed. *Kellogg v. Conner*, 10 Paige, 311. The statute has respect only to what may be done *without the consent* of the purchaser; and what might be done in respect to the estate and its redemption by agreement between the owner of the equity and the purchaser, is left to the law as it previously existed. Unlike the right to redeem from execution sales, the right of the owner of the equity and of the incumbrancer to redeem coëxist; but such rights are not inconsistent. *Livingston v. Arnoux*, 56 N. Y., 507. Under the act of 1859 and the amending act of 1872, the owner of the equity would have a right (until the last moment of the twelve months) to redeem from an incumbrancer who had previously redeemed from the purchaser; but a creditor or incumbrancer could not redeem from the owner of the equity who had redeemed from the purchaser. *Kellogg v. Conner, supra.* Redemption by the owner of the equity frees the estate from the lien of the certificate, and subsequent incumbrancers are thereby protected. *Ex parte Peru Iron Co.*, 7 Cow., 540; *Phyfe v. Riley*, 15 Wend., 252. The act of 1872 allowed subsequent incumbrancers to redeem from each other, but not from the owner of the equity of redemption. The act of 1859 provides for redemption of two kinds: (1) a redemption by the owner of the fee, which extinguishes

the certificate and cancels the sale; and (2) a redemption by a mortgagee, by which the sale may be carried into effect, and be followed by a deed. The right of the owner of the fee to extinguish the certificate and cancel the sale continues until the right to redeem expires as to all parties. Thus by the statute the owner of the fee may, *without the consent* of the owner of the certificate, defeat any attempt of an incumbrancer to acquire and hold the interest of the owner of the certificate; while he may, independently of the statute, accomplish the same result *with the consent* of such certificate-owner. And there is nothing in this opposed to the policy of the law, which, on the contrary, favors redemption from judicial sales. In support of the view that the interest of the certificate-owner might be extinguished with his consent so as to defeat a redemption, counsel cited *Miller v. Lewis*, 4 N. Y., 554, 558, 560; *Ex parte Peru Iron Co.*, 8 Cow., 540, 554, 585; *Bank of Vergennes v. Warren*, 7 Hill, 93. He also suggested that probably the result of the release of the Fond du Lac property was, that the sale of the entire mortgaged premises was vacated, and the owners of the certificate, having abandoned their rights *under the statute*, were entitled simply to a lien on the Sheboygan property. See *Ott v. Rape*, 24 Wis., 336. 2. That an incumbrancer redeeming is not a purchaser, within the meaning of the law, but acquires only the interest which the certificate-owner had, which is merely an *equitable* interest, the legal estate not passing until the execution of a sheriff's deed. Redemption by an incumbrancer is not a satisfaction of his incumbrance; he may still enforce payment of his debt. *Ex parte Peru Iron Co.*, 7 Cow., 540; *Emmet's Adm'rs v. Bradstreet*, 20 Wend., 50; *Van Horne v. McLaren*, 8 Paige, 285. The equitable interest acquired by the incumbrancer, by redeeming, is not within the protection of the recording act. And as between different equities, the elder must prevail. *Curts v. Cisna*, 7 Biss., 260, 265–6, and cases there cited; *Peabody v. Fenton*, 3 Barb. Ch., 464;

*Boone v. Chiles*, 10 Peters, 177, 242; *Hunter v. Simrall*, 5 Litt., 62; *Halstead v. Bank of Ky.*, 4 J. J. Marsh., 555; *Blight's Heirs v. Banks*, 6 Mon., 192. The same rule which limits the interest acquired by a purchaser at execution sale to that which the judgment debtor actually owned (*Jackson v. Town*, 4 Cow., 606), applies to an incumbrancer seeking to acquire the interest of the purchaser at a judicial sale. The sheriff's deed to such a purchaser or to such redeeming incumbrancer does not avail, even though recorded before the prior conveyance. *Jackson v. Town*, 4 Cow., 599, 605, 607; *Jackson v. Chamberlain*, 8 Wend., 620. Moreover plaintiff was in possession holding the release, and therefore *Camp* cannot claim protection under the recording act. Besides, his title by the sheriff's deed was subject to be affected by constructive notice through the registry up to the time when the sheriff's deed was delivered; and the assignment to Pier and Baker, and their release to plaintiff, had been on record more than three days before that time. The assignment of the certificate, and the release, were conveyances within the meaning of the recording act. R. S., secs. 2242, 2238. The case cited for appellant from Minnesota was one of strict statutory redemption without the purchaser's assent. Those from Illinois are not in point, because in them the certificate was not extinguished or cancelled in whole or in part, but was *assigned* and kept alive. Other courts take a more liberal view even in such a case. *Wood v. Morehouse*, 45 N. Y., 369, 378; *Merritt v. Hasbrouck*, 1 Wend., 46. 3. That there was no sufficient evidence of facts which would create an equitable estoppel against the plaintiff.

The appellant's counsel, in reply:

1. The assertion that the owner of the equity of redemption, where incumbrances exist at the time of the judgment and sale, may redeem independently of the statute by agreement with the holder of the certificate of sale, is not supported by a single authority. *Miller v. Lewis*, 4 N. Y., 554, merely holds

that an agreement made upon sufficient consideration, between the judgment debtor and the purchaser of his land at execution sale, enlarging the time within which the debtor may redeem or extinguish the lien acquired by the sale, is valid so as to affect a creditor who *subsequently* (but within the statutory period) obtains a judgment, so that he cannot redeem or acquire the purchaser's interest under the statute. *The Bank of Vergennes v. Warren*, 7 Hill, 93, was one of strict statutory redemption. In *Ex parte Peru Iron Co.*, 7 Cow., 540, there appears to be nothing applicable to the questions here in controversy. In *Ott v. Rape*, 24 Wis., 336, it was not claimed that the owner of the equity had redeemed, but, as it appeared that no other party had any interest in the land or the certificate, it was held that the acceptance of a part of the purchase money by the plaintiff and purchaser waived *his* right to enforce a forfeiture of the equity of redemption according to the terms of the certificate. All these cases, too, arose upon sales on *execution*, where subsequent incumbrancers were not parties to the action in which the sale was made. Here appellant was a party to the foreclosure suit, and his rights as an incumbrancer were recognized and fixed therein. He had a right, under the statute, in case there was no redemption within a year by some authorized party, to acquire the interest *obtained by the purchaser at the sale*, and not merely such qualified interest as the purchaser or some subsequent holder of the certificate might retain after some secret agreement with the owner of the equity of redemption. Counsel intimate that the result of the transaction releasing the Fond du Lac property probably is, that the sale of the entire mortgaged premises was vacated. In other words, the owner of the equity may redeem a parcel of land sold together with others, although the statute only authorizes a redemption of parcels separately sold. He and the certificate-owner may make any kind of agreement regarding the certificate, open or secret, and it is binding upon all the other parties to

The Mihills Manufacturing Co. vs. Camp, Trustee, etc., and another.

the suit.    They may agree that payment of the certificate may be extended for ninety-nine years.    A release of the premises may even be secretly executed, and the parties thereto may speculate upon the chances whether a subsequent incumbrancer will redeem, under an agreement to destroy the release and take a deed if he does not, and to place it on record and take the money if he does.    And it would even seem that, according to this view, the owner of the equity is not restricted to " one year from and after the sale," in which to redeem, but, if he finds, after the expiration of the year, that a judgment creditor or incumbrancer has redeemed under the statute, he may procure a release, or some agreement from the certificate holder qualifying its legal effect, and put it on record prior to the execution and recording of the sheriff's deed to the redeeming creditor, who, by his redemption in full compliance with the statute, acquires no right as against such release or agreement.    The present case furnishes a sufficient illustration of the injustice which such a doctrine would work.    2.  When *Camp* redeemed, plaintiff was in possession under the deed of the Mihills to it, executed in 1874; and such possession was not constructive notice of any rights in plaintiff under the release. *Great Falls Co. v. Worster*, 15 N. H., 412; *Rawley v. Brown*, 71 N. Y., 85; *Sornberger v. Webster*, Clarke's Ch., 188; *Flagg v. Mann*, 2 Sumn., 486.    And *Camp* had neither actual nor constructive notice of the release until after the redemption.

Orton, J.    Without passing upon other questions raised, and so ably discussed upon this appeal, we are compelled to hold that the acts and conduct of the respondent company, as they appear by the evidence, *estop* the company from setting up their release of the Fond du Lac property from the first mortgage sale.

Pier and Baker were officers of the company, one as president and the other holding the financial office of treasurer. Being such officers, but as individuals, as they claim, they

bought and owned the certificate of sale, and as such released from the same the Fond du Lac property to the respondent. Being such officers, but as *individuals*, they kept this release secret and concealed from *Camp*, the trustee and subsequent mortgagee, and from the creditors in the trust. And being such officers, but as *individuals*, as they claim, they had several interviews with Bryant, one of the principal creditors in the trust, and who had the chief management of the matter for *Camp*, the trustee, in respect to the *Camp* mortgage, its payment and its relations with the first sale; and in one of such interviews, at least, they claimed to have bought and owned the certificate of the first sale; and upon the offer of Bryant to purchase it, they refused to sell it to him for *Camp*, the trustee; and this was long after the time they had released the Fond du Lac property from it.

We think it clear, from the evidence, that they had knowledge, as *individuals* at least, that Bryant intended to redeem the Fond du Lac property from such sale for *Camp*, the trustee, if the *Camp* mortgage was not paid, and had knowledge that he was about to redeem the same, and did so redeem it, on the last day of redemption, not knowing that the Fond du Lac property had been long before released to the respondent, and allowed Bryant to pay to the sheriff for such redemption the sum of $6,500, for the Fond du Lac property, which they had long before released to the respondent company of which they were such officers. Under these circumstances, perhaps, there was no legal duty imposed upon them, *as individuals*, to disclose to Bryant such an important fact, which they knew he was ignorant of, and was about to pay, and probably lose, so large a sum of money through such ignorance, however dishonorable such a concealment might have been.

There is a strange and suspicious confusion of individual and official relations, duties and responsibilities all through this transaction, and a separation and distinction of official and

personal identity which we think ought not to be recognized or receive judicial indorsement. Pier and Baker, although, as they claim, they were interested and acted only for themselves in this matter, were, nevertheless, officers of the company, and the company was also deeply interested in the same matter, and as such officers they had a duty to perform for and on behalf of the company, which they could not ignore or neglect with impunity. The company, to the extent of its interests, was present *with* and *by* them in all of these pretended personal interviews with Bryant, and it was unquestionably their duty, as such officers, to make the proper disclosures for the company of these facts (which for their own gain only they may have concealed), which would prevent this fruitless investment of Bryant to redeem property which they knew the company held and owned exempt from such *redemption*. By all authorities, and the commonest principles of equity, we are compelled to hold that these fraudulent concealments by these officers were the fraudulent concealments of the company, and that the company is now *estopped* thereby from setting up their release of the Fond du Lac property from the first mortgage sale to the detriment of the *Camp* mortgage.

The legal and equitable result of so holding might be to divest the company of all title to the Fond du Lac property; but as many persons, as stockholders or creditors or otherwise, may be interested in the company, property and business, who ought not innocently to suffer on account of this conduct of the officers of the company, we think such a disposition of the case should be made that none of the parties may suffer injury; and we shall therefore remand the cause with directions to the circuit court to grant the relief prayed for, on condition *only* that the respondent company reimburse the said Bryant or the said *Camp*, as the case may be, for the amount he paid for such redemption, with interest.

The judgment of the circuit court is reversed, with costs, and the cause remanded with directions to that court to ascer-

tain the amount which George T. Bryant paid to the sheriff for the redemption of the property sold on the first foreclosure, and order and adjudge that the respondent pay the same to the said *Camp*, trustee, together with interest thereon from the time the same was paid by the said Bryant, within ninety days from this time; and, on the payment of the same within that time, order and adjudge that the respondent have the relief prayed for in the complaint; otherwise, and if said payment so ordered is not made within such time, the complaint to be dismissed.

TAYLOR, J., took no part.