KEOKUK ELECTRIC RAILWAY AND POWER COMPANY, Appellee, v. CHARLES F. WEISMAN, Executor, Appellant.
(And one other case.)

**Easements:** CONVEYANCE OF SAME AS AN APPURTENANT RIGHT. Where, as in this case, the defendant was the real owner of a light and power plant and an adjoining residence property, over which latter property he maintained and used a way by which to reach the light plant, and across which he maintained a lead of electric light poles, a conveyance of the light property describing everything used in connection with the light plant, and all rights, privileges and appurtenances thereto belonging, transferred to the grantee the right to use the way across the adjoining property and for the maintenance of the light poles then in use; all of which was a visible and apparent use then appurtenant to the light plant.

**Same.** Where the defendant as in this case was the owner of practically all the stock of a light and power corporation, with complete individual management of the same, negotiated for the organization of a new corporation to purchase and operate the plant, taking practically all of the stock of the new corporation, and while so owning the stock of both corporations he conveyed the plant to the new one: It is held that he was the real owner of the plant, and as he also owned adjoining property over which a way existed to the plant, and a lead of light poles was then maintained, a conveyance by him to the new corporation of the light and power plant carried with it such easements.

**Same:** TERMINATION OF EASEMENT. The fact that a portion of the way across defendant's adjoining premises was destroyed by the elements did not operate to terminate the easement.

*Appeal from Lee District Court.*—HON. HENRY BANK, JR., Judge.

WEDNESDAY, APRIL 6, 1910.

THIS is an action in equity to establish plaintiff's right to an alleged easement over the real estate of the defendant. There was a decree for the plaintiff, and the defendant appeals.—*Affirmed.*

*W. J. Roberts* and *William C. Howell,* for appellant.

*Hollingsworth & Blood,* for appellee.

EVANS, J.—The original defendant in this case was J. C. Hubinger. After the trial in the court below, he died, and his executor has been substituted as the defendant. It will be more convenient for us in the discussion to take no account of this substitution and to refer to Hubinger as the defendant, inasmuch as he so appears throughout the record of the court below.

The property in which an easement is claimed is the residence property of the defendant. This property consists of spacious grounds highly improved as a residence, and comprises thirteen lots in block forty-five in the city of Keokuk. These lots run parallel across the block, and comprise approximately the south half of the block. This block is a long, narrow block, and its lots are numbered consecutively from one to twenty-seven, beginning at the south end. This block is on the crest of a high bluff overlooking the Mississippi River to the east and abutting on the east line of Grand Avenue. The bluff upon which

defendant's residence property is situated is one hundred
feet high.   Adjoining the south nine lots thereof on the
east and at the foot of the bluff one hundred feet below
is situated the site of the Electric Light and Power works,
extending from the foot of the bluff to the Mississippi
River.   This power plant has been in operation, furnishing
the electric light and railway service for the city of Keo-
kuk, for many years.   Many years ago Hubinger became
the owner of this power plant.   For the purpose of its
operation, he organized a corporation under the name of
"J. C. Hubinger Company."   To this company he trans-
ferred the power plant.   All of the stock of this corpora-
tion was owned by Hubinger, although four or five shares
were by him transferred to others to enable them to serve
as directors of the corporation.   All of the business of
this corporation was transacted by Hubinger personally
without the formality of directors' meetings.   Grand Ave-
nue runs parallel with the Mississippi River, and in the
general direction of north- and south.   It is the eastern-
most street of the city.   The east and west streets of
the city terminate at this avenue.   The power plant, there-
fore, was cut off from immediate connection with the
streets and avenues of the city by defendant Hubinger's
residence property.   For the purpose of connecting the
plant with Grand Avenue and with that part of the city
lying west thereof, the defendant erected a "lead" of three
poles across the south end of the residence property on
lot one, and strung the conducting wires thereon.   And
this lead of poles and wires furnished the only connection
with the city proper up to the beginning of this contro-
versy.   Nor was there any practicable way whereby the
employees of the power plant and those having business
with it could gain access thereto from the city proper,
except by passing over the residence property of Hubinger
or the private property of others adjoining thereto.   It
became customary, therefore, to go to and from such power

plant over a pathway leading up the bluff and crossing the defendant's residence property to Grand Avenue. In 1899 the defendant erected substantial steps up the bluff opposite lots five and six, and a landing at the head of his retaining wall. From this point a cement walk led across his grounds to a gate at Grand Avenue. These steps and the cement walk thereupon became the fixed line of travel to and from the power plant. The only other possible way whereby access could be obtained to the power plant was by a detour of one-half mile to the north, down Anschutz Hill to the River Road abutting on and lying between the tracks of the Chicago, Burlington & Quincy Railroad. On the following page is a plat of the premises involved in the controversy.

In 1900 Hubinger entered into negotiations with one Wallace for the sale of the electric plant. Wallace was acting for undisclosed principals. These negotiations resulted in the purchase of the plant by the present plaintiff. For two or three years after this purchase, the present plaintiff continued the use of the lead of poles and wire and the footway for pedestrians over defendant's residence property in the same manner as before, and without any question of right thereto being raised by the defendant. In 1901, one year after the transfer, at the request of Hubinger, the lead of poles for the conduct of electric wires was changed, in this: that higher poles were substituted and two poles were used in lieu of three. The substituted poles were fifty-five feet in height, whereas the former were only thirty-five feet. The detailed method whereby the power plant was sold and conveyed was that the present plaintiff was organized as a new corporation. Three thousand nine hundred and ninety-five shares of its stock (being all the shares of such stock except five) were issued to the Hubinger Company. Two hundred and fifty thousand dollars of bonds of the new company were also issued, and these were all issued to the Hubinger Com-

pany. Thereupon Hubinger, for the Hubinger Company, conveyed the power plant with "all its appurtenances" to the new corporation, which is the plaintiff herein. The purported consideration for such a conveyance was the issue to the Hubinger Company of all the shares and all the bonds of the new corporation as already indicated. Thereupon Hubinger, for the Hubinger Company, transferred to the principals of Wallace all such shares and bonds of the new corporation for the consideration originally agreed on, $182,000. On behalf of plaintiff, it is shown by the testimony of Wallace and another that at the time of the conveyance of the property, the question of the right of access to the property over the grounds of the defendant was raised and discussed, and that Hubinger agreed that such right should continue. This is denied by the testimony of the defendant.

The argument has naturally taken a wide range both on the law and the evidence. It is contended generally on behalf of the plaintiff that the instrument of conveyance carried with it such right as a matter of law, and that, if this is not so, it is entitled to such privilege by force of the express agreement of Hubinger in reliance upon which the purchase of the property was made. Upon the same facts it bases also a plea of estoppel. On behalf of defendant, it is argued that no easement could have been created over the defendant's property while the power plant was owned by the Hubinger Company, and that the plaintiff could acquire no greater rights than its grantor had. He also argues that any representations made to Wallace can not inure to the benefit of the plaintiff because it was never in privity with Wallace. It does not hold its title under Wallace. Therefore it is said there was no privity of estate. It is said also that Wallace was not representing it in the transaction, and therefore there was no privity of contract. It is argued, also, that in conveying the property from the Hubinger Company to the

new corporation Hubinger was simply dealing with himself, and could not, therefore, be guilty of fraud nor be subject to estoppel because he was the owner of the Hubinger Co. and the Hubinger Company was the owner of the new corporation. The following excerpt from appellant's argument is sufficient to illustrate the general theory of the defense:

The J. C. Hubinger Company sold the bonds and stock and received for them $182,000. Granger Farwell and J. B. Wilber furnished the money. There was no consideration paid directly in money by the Keokuk Electric Railway & Power Company to J. C. Hubinger Company. The consideration was the bonds, and the money was raised by the sale of them. Before this sale, the J. C. Hubinger Company was the owner of this plant, and J. C. Hubinger was the owner of all but four or five shares in the J. C. Hubinger Company. Immediately after the sale, the J. C. Hubinger Company was the owner of all but five shares of the Keokuk Electric Railway & Power Company, and all of its bonds. The plaintiff is seeking to treat itself as an independent purchaser of this plant, as a sort of an innocent purchaser. This transfer was conducted for the J. C. Hubinger Company and for the Keokuk Electric Railway & Power Company by Mr. Hubinger. No money whatever was paid. It was merely an exchange of property for an exchange of stock in a corporation. There is not the slightest evidence that J. C. Hubinger, as the Keokuk Electric Railway & Power Company, relied upon any oral representation of J. C. Hubinger in making this exchange. While the technical title of the plant changed, there was in fact no change in the beneficial ownership. No person can create an estoppel in favor of himself. Mr. Hubinger's relations to both of these companies at the time of the transfer were such that it was impossible to create any estoppel arising directly in favor of the Keokuk Electric Railway & Power Company.

I. That the use of the right of way both for foot travel and for the conduct of the wires was a visible and

apparent use then appurtenant to the power plant is too

plain for argument. It is also clear that,

**I. EASEMENTS:** if the plaintiff's grantor had a right to con-
conveyance
of same as an
appurtenant    vey such use as a property right to the
right.

plaintiff as its grantee, the terms of the
conveying instrument were sufficient to cover the same.
The conveying instrument purported to convey, among
other things, the following: "Everything provided for use
for or in connection with said electric light plant," and
"all rights, privileges, and appurtenances thereto belong-
ing." Assuming for the moment that J. C. Hubinger was
the real owner of both properties at the time of the con-
veyance to the plaintiff, such conveyance created and
carried with it as a matter of law such easement or servi-
tude which was apparent and visible as an incident or
appurtenance of the property conveyed. This rule has
received consideration in some of our recent cases and
has been fully discussed therein, and we will not repeat
the discussion. *Carrigg v. Bank,* 136 Iowa, 261; *Ice Co.
v. La Plant,* 136 Iowa, 621; *Teachout v. Duffus,* 141
Iowa, 466.

The following quotations from the foregoing cases are
a sufficient exemplification of the rule as applied to the
facts in this case.

It may be considered as settled that, on the convey-
ance of one of several parcels of land belonging to the
same owner, there is an implied grant or reservation, as
the case may be, of all apparent or continuous easements
or incidents of property which have been created or used
by him during the unity of possession, though they could
then have had no legal existence apart from his general
ownership. . . .

The principle is that where the owner of two tene-
ments sells one of them, or the owner of an entire estate
sells a portion, the purchaser takes the tenement or por-
tion sold with all the benefits and burdens which appear
at the time of the sale to belong to it as between it and

the property which the vendor retains.    This is one of the recognized modes by which an easement or servitude is created.    No easement exists so long as there is a unity of ownership, because the owner of the whole may at any time rearrange the qualities of the several parts; but, the moment a severance occurs by the sale of a part, the right of the owner to redistribute the properties of the respective portions ceases and easements or servitudes are created corresponding to the benefits and burdens mutually existing at the time of the sale.

The question still remains: Can J. C. Hubinger be regarded as the real owner of both parcels of land, notwithstanding that the legal title of one was in the Hubinger Company?    Under the facts disclosed in this case, we have no doubt upon that question. 2. SAME.
Equity looks to the substance, and not to the form.    Hubinger was the owner of the Hubinger Company.    He made the conveyance for such company without even the formality of action by a board of directors.    He received the consideration agreed upon.    He alone was interested in the success of the negotiations, and he alone was benefited by them.    He was concededly the "beneficial owner" of the property.    Although the legal title was technically in the Hubinger Company, it was within the control of Hubinger alone.    He alone could direct to whom such legal title should be conveyed.    It was within his own volition to take it to himself, or to pass it to another. This consideration disposes also of appellant's contention that there was no privity between Wallace and the present plaintiff, and that Wallace was not representing the present plaintiff in the negotiations with Hubinger.    The real transaction as equity sees it, stripped of all cover and separated from all indirection, was that Hubinger proposed to sell, and Wallace, for his principals, proposed to buy, the plant in question for the consideration of $182,000. This was the objective and the final outcome.    The fact that a new corporation was formed and that capital stock

and bonds were issued does not obscure the transaction as a whole nor change its character. The ultimate objective was the same as though it had been accomplished by a more direct method. These were not several and independent transactions, though they appear upon their face as such; but they were all parts of one transaction which was all agreed upon in the minds of the parties in advance. Although on the face of it, at the time of the organization of the new corporation, Hubinger was the owner of it, yet he became such for the purpose of transferring his stock and bonds to the principals of Wallace for the consideration already agreed upon. These principals and Wallace were the only persons who had any interest in the transaction adverse to Hubinger. Hubinger was not contracting with himself for the mere purpose of doing business with himself. The transaction was finally consummated as agreed upon, and the agreed consideration was paid. Hubinger was represented in the transaction under the name of Hubinger Company, and equity will regard the principals of Wallace as represented in the transaction under the name of the new corporation whose stock and bonds they had purchased by executory agreement in advance of its organization. We do not ignore the fact that a corporation is a separate legal entity. This is a legal fiction which has its appropriate purpose and use, but can never be urged to an intent and purpose not within the reason and policy of the organization. *State v. Standard Oil Co.,* 49 Ohio St. 137 (30 N. E. 279, 15 L. R. A. 145, 34 Am. St. Rep. 541); *Mihills v. Camp,* 49 Wis. 130 (5 N. W. 1); *Warren v. Davenport,* 31 Iowa, 464. In such cases equity will not be abashed by forms or fictions nor be bound by technical rules, but will penetrate to the very substance of the matter. See *Gas Co. v. West,* 50 Iowa, 16; *Chicago Union Traction Co. v. Chicago,* 199 Ill. 579 (65 N. E. 488).

We reach the conclusion that Hubinger must be

deemed as the owner of the power plant at the time of its conveyance to the plaintiff company, and that such conveyance carried with it as a matter of law the right to the use and servitude then existing over the residence property as already indicated. Many other questions are argued by counsel, but our conclusion is that this point is decisive of the case and requires an affirmance of the decree below.

It is urged upon our attention by the appellant that in the spring of 1904 a fall of earth carried away twenty or thirty feet at the upper end of the flight of steps, and that the easement was terminated by such destruction. We do not deem the point well taken. The substantial rights of the plaintiff go much beyond the right to use the mere flight of steps. Plaintiff is not asking that the defendant be required to restore or repair, but it has assumed such expense in its own behalf.

3. SAME: termination of easement.

Another case was consolidated herewith, and is referred to in the caption herein. It is, in fact, the same case between the same parties involving precisely the same controversy, and carrying a reverse title. After the commencement of this case, the defendant herein brought an action as plaintiff naming the plaintiff herein as defendant therein. Hubinger's petition in the second action is used as a cross-bill in the first action, and the plaintiff's petition in this action is used as a cross-bill in the second action, a most intolerable practice, which the trial court ought not to have permitted. The decree entered below granted the plaintiff the relief prayed in the first case and dismissed Hubinger's petition in the second case.

The decree was right, and it is in all respects, *affirmed.*