PHEBE D. LAPLANT, Appellee, v. A. C. SCHUMAN et al., Appellants.

EASEMENTS: Not Implied Contrary to Intent. The grantee of part
1  of a tract of land may not—at least in the absence of *strict* necessity—have an implied easement in the form of a driveway over the remaining portion retained by the grantor, when the facts and circumstances demonstrate that no such easement was *intended* by the parties.

DEEDS: Construction—Quitclaim Working Release of Easement. An
2  easement in land may manifestly be wholly surrendered by a duly executed and delivered quitclaim deed.

*Appeal from Marshall District Court.—James W. Willett,*
*Judge.*

December 11, 1923.

Rehearing Denied March 7, 1924.

Action in equity, to enjoin defendants from obstructing a
driveway over real estate belonging to the defendant A. C. Schu-
man, which is claimed as an easement appurtenant to adjoining
property of plaintiff. Decree for plaintiff, and defendants ap-
peal.—*Reversed.*

*F. E. Northup,* for appellants.

*C. H. E. Boardman,* for appellee.

Vermilion, J.—The facts are not in serious dispute. It ap-
pears that, for some years prior to January 6, 1914, Charles T.
LaPlant was the husband of plaintiff, and was the owner of lots
10, 11, and 12 in Block 7 in the city of Mar-
shalltown. The tract so designated is bounded
on the south and east by streets, and on the
north and west by public alleys. The lots, each 60 feet in
width, front on the street to the south, Lot 10 lying on the
west, and Lot 11 adjoining it on the east. Charles T. LaPlant
erected four dwelling houses on the tract, three on Lot 12, and
one on Lot 11, fronting on the street to the south, and a brick
flat building on Lot 10, with its east wall upon a portion of the
line between Lots 10 and 11. A cinder driveway was constructed
on Lot 11, in the space between the dwelling and the adjoining
flat building, leading from the street in front and connecting
with a circular driveway in the rear of the house. Access could
also be had to the circular driveway from the public alleys to the
west and north of the tract. A reference to the accompanying
plat will make the situation plain.

1. EASEMENTS:
not implied con-
trary to intent.

The portion of the driveway on Lot 10 extending from the street northward, in addition to affording access to the rear of all the houses, was used for putting coal into the east side of the basement of the flat near the north end of the building.

On January 6, 1914, the plaintiff procured a divorce from Charles T. LaPlant. While the divorce action was pending, and in contemplation of a decree of divorce, the parties entered into a stipulation respecting a division of their property, whereby it was agreed that, in case a divorce should be granted, plaintiff should have Lot 10 and the north half of Lots 11 and 12. The decree of divorce carried out their arrangement, and awarded

the last mentioned property to the plaintiff. The result of this was to leave in Charles T. LaPlant the title to the south half of Lot 11, over which ran the driveway in question, and to give to plaintiff the title to Lot 10, upon which stood the flat building. The decree contained these three further provisions, which are also found, to the same effect, in the stipulation:

"It is, however, at all times understood by the parties and agreed to by them, and decreed by the court, that the west line of said C. T. LaPlant's tract is to be the middle line of the wall now located on the west line of said real estate, and that the said wall is to be a party wall, one half ($\frac{1}{2}$) standing on the property of the other, and that plaintiff and defendant each own an undivided one half ($\frac{1}{2}$) of said party wall. It is the decree of this court that the real estate thus apportioned is to be the absolute property of the person receiving the same, free and clear of any claim of the other, and free and clear of any homestead, dower, or other rights. It is further ordered and decreed that, in case there is any real estate not herein enumerated and disposed of, it is decreed the same is to be the exclusive property of the party in whose name the record title now stands."

On January 7, 1914, the plaintiff, by quitclaim deed, which was filed for record on the following day, and duly recorded, conveyed to Charles T. LaPlant the south half of Lots 11 and 12, being the same property the title to which was left in him by the divorce decree. This deed contained the following provisions:

"It is, however, understood that the west line of the above described tract of land is to be the middle line of the wall now located on or near the east line of Lot 10, in Block 7, Marshall, and that said wall is to be a party wall, one half standing on the property of this grantee, and the other half on the property belonging to the grantor. Subject, however, to the right of the grantor to maintain all water, gas, and sewer pipes on said premises and connected with the property abutting conveyed by this grantee to the grantor herein, with the right to repair and renew the same, and the said Phebe D. LaPlant releases all her right of dower and other interest in and to the above described premises."

Charles T. LaPlant died in about 1916; and in 1920, the

defendant Schuman purchased of one Woodward, who acquired title by descent or devise from LaPlant, the west 56 feet of the south half of Lot 11, the conveyance thereof expressly covering the interest of the grantor in the undivided one half of the brick wall constructed on the party line between Lots 10 and 11. During all of the time since its construction, in about 1898, the driveway in question, extending along and over the west side of the property so purchased by defendant, had been plainly visible to the most casual observer, and its use in connection with the flat building open and obvious. The defendants who had occupied the property as tenants, before their purchase of it, were familiar with the situation, and had actual notice that a right was claimed to have the driveway maintained as it was. Indeed, prior negotiations for the purchase of the property from LaPlant, before his death, had been broken off because of such a claim. The defendant Schuman, while denying knowledge that Charles T. LaPlant had once owned all of the property and had arranged and used it as it was, had examined an abstract of title, and appears to have made the purchase relying on what was there disclosed as to the title.

Prior to the commencement of the action, the defendants were about to construct a garage near the rear of the plot of ground owned by them, and upon the driveway in question. It was not proposed to use the party wall of the flat building in so doing, but a space of about two feet was to be left between the two buildings. With this exception, the garage would extend across the driveway, and completely close it. A temporary injunction was issued, enjoining the defendants from obstructing the driveway, and on final hearing, this was made permanent. The plaintiff claims a right to have this driveway remain open, and to use it as appurtenant to her flat building on the west. She bases her claim upon a principle often stated by this and other courts, which, in the headnote of a leading case upon the subject, is thus aptly expressed:

"Where the owner of land has, by any artificial arrangement, effected an advantage for one portion, to the burdening of the other, upon a severance of the ownership the holders of the two portions take them respectively charged with the servitude and entitled to the benefit openly and visibly attached at the

time of the conveyance of the portion first granted.'' *Lampman v. Milks,* 21 N. Y. 505.

This doctrine has been many times announced by this court as applicable, under proper circumstances, to a variety of easements. *Marshall Ice Co. v. LaPlant,* 136 Iowa 621; *Kane v. Templin,* 158 Iowa 24; *Keokuk Elec. R. Co. v. Weisman,* 146 Iowa 679; *Stephens v. Boyd,* 157 Iowa 570; *Carrigg v. Mechanics Bank,* 136 Iowa 261; *Teachout v. Duffus,* 141 Iowa 466. Indeed, there is, and could be, no question of the rule. As has often been said, it is elementary.

It is equally plain that an easement by implication does not arise under such circumstances until there is a severance of the land by the owner of the whole. It is axiomatic that no one can have an easement in his own property. He may change at will any artificial arrangement for the use of any part, so long as he owns the whole, and it is only upon a severance by sale or otherwise that an easement is created, corresponding to the arrangement made prior to and visibly existing at the time of the severance. This inheres in the very thing itself. The implication of an easement arises only upon severance. It is apparent, then, that it is of no importance, except as bearing upon the character of the easement, how long the arrangement or use which it is claimed after severance constitutes an easement appurtenant to a part, had continued while there was unity of ownership. This is said in respect to the claim of appellee that the driveway in question had been in existence as a means of access to the flat building for many years before the severance of the property by the divorce decree.

How far the creation of an easement by implication upon the severance of an estate is controlled by the necessity for its use in the enjoyment of the claimed dominant estate, is a question upon which authorities are not in accord. 19 Corpus Juris 919. In this state, the rule that easements by implication will not arise except in cases of strict necessity has not been followed. A distinction is recognized between easements by implication and easements by necessity, and the rule adopted in reference to the creation of the former is that such rights, and such rights only, may be so acquired as, in the nature of the case, must be presumed to have been in the contemplation of the parties; and

the necessity of that use for the convenient enjoyment of the premises is a material consideration in determining whether the easement will be implied. This is the holding of the cases cited above. Judge Dillon, in the case of *Morrison v. Marquardt*, 24 Iowa 35, said:

"The doctrine of implied easements rests upon the supposed intention of the parties, as deduced from the situation and condition of the two estates to which the easement relates."

It appears from the testimony without dispute that, while there is another way of access to the rear of plaintiff's flat building over her property from the alleys on the west and north, there is no access to the coal bin in the basement of the flat, except from the driveway in question. The testimony is not entirely clear upon the question, but it is a fair inference from the facts established that some changes would have to be made in the flat building in order to receive coal at the rear, instead of at the side, from the driveway in dispute, as has heretofore been done. So far as this aspect of the case is concerned, it is very similar to the *Teachout* case, supra. In short, the showing in this respect is such that, if there were nothing more to this case than the existence and use of the driveway and the severance of the property by the decree of divorce, it would present no difficulty.

There are, however, other facts established beyond controversy, which lead us to the conclusion that it was never in the actual contemplation of the parties that an easement appurtenant to Lot 10, consisting of a driveway over Lot 11, should be created or implied. And, in the face of facts showing conclusively to the contrary, no inference to that effect can be entertained from the visible arrangements and use of the premises at the time a part is severed from the whole,—at least in the absence of strict necessity,—although from these standing alone it might be so drawn. The decree of divorce, which accomplished the severance of Lot 10 from the tract owned by Charles T. LaPlant, and gave rise to the implied easement, if one was created, and the stipulation of the parties which preceded the decree, expressly gave or reserved to him a one-half interest in the wall of the flat building standing on the line between Lots 10 and 11, and made it a party wall. If this decree at the same

time, by severing and setting off to plaintiff Lot 10 from the ground owned by LaPlant, created, as an implied easement appurtenant to Lot 10, the right to have in perpetuity a driveway along the wall, it is apparent that LaPlant's ownership of half the wall as a party wall, with the right to use it in the erection of a building on Lot 11, was destroyed. Again, it is to be noted that both the stipulation and the decree designate what portion of the lots is to be retained by Charles T. LaPlant, as well as that going to plaintiff; and the terms used to effect this are identical in the two instruments and in respect to the two parties. The decree recites that, while the record title to the lots in question is in C. T. LaPlant, they were purchased and improved by joint funds and shall be divided as follows: Phebe D. LaPlant is to have and to own all of Lot 10 and the north half of Lots 11 and 12, and C. T. LaPlant is to have and own the south half of Lots 11 and 12. This is followed by the provision above set out, to the effect that the real estate thus apportioned is to be the absolute property of the person receiving it, free and clear of any claims of the other, and that, in case there is any real estate not therein enumerated and disposed of, it is to be the exclusive property of the party in whose name the record title then stood. In this situation, and in view of these acts and declarations of the parties, we think it cannot be inferred that it was within their contemplation that plaintiff should have, as an easement appurtenant to Lot 10, a right of way over the south half of Lot 11, to the destruction of LaPlant's expressly reserved interest in the party wall, and as against the express stipulation and solemn decree that each should have the property so apportioned, free and clear of any claims of the other.

Further, whatever right or claim plaintiff may have had to a right of way over the south half of Lot 11 was released by her quitclaim deed of January 7, 1914. If this deed is to be considered as a part of the transaction of severance by which her claimed easement was created, it amounts to an express subversion, which counsel for appellee contends must be shown, to defeat an easement arising by implication under the circumstances shown here. If it is to be regarded as a subsequent and separate transaction, it is a release of the easement by the owner

2. DEEDS: construction: quitclaim working release of easement.

of the dominant estate to the owner of the servient estate. She conveyed all her right, title, and interest in and to the south half of Lot 11, the servient estate, with certain reservations. These reservations are of an interest in the party wall heretofore mentioned, and the right to maintain and repair all water, gas, and sewer pipes on the premises conveyed, connected with the abutting property conveyed by the grantee to the grantor. This evidently refers to Lot 10 and the water, gas, and sewer pipes connected with the flat building thereon. By this conveyance she parted with whatever right she had to any interest or estate in Lot 11 save what she reserved, and, under a familiar maxim, having expressly reserved some things, she reserved no others. *Expressio unius est exclusio alterius.* Blackstone says (Book II, Ch. VII):

"An estate in lands, tenements, and hereditaments, signifies such interest as the tenant has therein; so if a man grants all his estate in Dale to A and his heirs, everything that he can possibly grant shall pass thereby."

The conveyance of all her right and interest in Lot 11 was effective to pass to LaPlant any easement therein appurtenant to the property owned by her.

"The owner of an easement may release the right to the owner of the servient estate by deed, and, being an interest in land, it can be released only by deed." 19 Corpus Juris 949.

"As easements may be acquired by actual or constructive grant in various forms, as has been shown, so they may be surrendered, lost, or extinguished by actual or constructive release. Among these would be a release in terms by a deed by the owner of the dominant to the owner of the servient estate. It is hardly necessary to illustrate this proposition by decided cases." Washburn on Easements and Servitudes (4 Ed.) 683.

See, also, *Flaten v. Moorhead City,* 58 Minn. 324; *Comstock v. Sharp,* 106 Mich. 176; *Randolph v. Read,* 129 Ark. 485; *Hatcher v. Stipe,* (Tex. Civ. App.) 45 S. W. 329; *Dickson v. Wildman,* 183 Fed. 398; *Vanhoose v. Fairchild,* 145 Ky. 700.

At the date of this deed, the easement, if one was created at all, was fully vested in plaintiff as appurtenant to her adjoining lot and flat building, in virtue of the prior severance effected by the decree of divorce. In that situation, she released

by the quitclaim deed all her right, title, and interest in and to the servient estate, except half of the party wall and the right to maintain gas, water, and sewer pipes serving her lot. So far as the record shows, the right of way was the only other thing, the only other right or interest in the servient estate, which she had or claimed to have, upon which the conveyance could operate. All other rights which she had in it had been effectively cut off and extinguished by the decree of divorce. The suggestion that the purpose of the deed was to preserve of record a reservation of an easement respecting the gas, water, and sewer pipes, which, because their presence on the servient estate was not visible, would not be created by implication, is met by the fact that her grant is general, and covers all her interest, while her reservation is particular, and not only cannot be extended by implication, but negatives the idea that more was reserved. The quitclaim deed was a method universally recognized as proper under the law to release any claim plaintiff had of an easement of a right of way over Lot 11, and the conclusion that such was its effect is in no way avoided.

The decree, for the reasons indicated, should be, and is,— *Reversed.*

Preston, C. J., Stevens and De Graff, JJ., concur.