W. J. FEILHABER, Appellant, v. JOHN W. SWILER et al.,
Appellees.

**EASEMENTS: Creation, Existence, and Termination—Subsequent Unity
1. of Title—Effect.** A recorded conveyance of land which, in addition to conveying the land, also grants a private roadway over other lands of the grantor's, creates an easement which runs with the land, even though the grantor subsequently *reacquires* title to the lands first conveyed and again becomes the owner of both tracts and subsequently conveys both tracts by separate conveyances to different grantees.

**EASEMENTS: Prescription—Permissive Use.** Mere use of a way over
2 the land of another by permission of the latter furnishes no basis for a title by prescription.

Headnote 1: 19 C. J. pp. 937, 947 (Anno.)   Headnote 2: 19 C. J. p.
888.

Headnote 2: 44 L. R. A. (N. S.) 89; 9 R. C. L. 779.

*Appeal from Des Moines District Court.*—OSCAR HALE, Judge.

FEBRUARY 8, 1927.

REHEARING DENIED JULY 1, 1927.

Action in equity to establish and confirm a right of way across the land of the defendants. From a judgment dismissing the petition the plaintiff appeals.—*Affirmed.*

*Hirsch & Riepe,* for appellant.

*Seerley & Clark,* for appellees.

VERMILION, J.—The plaintiff and appellant owns a tract of about 40 acres of land in the northwest part of a quarter section in Des Moines County. The appellees Swiler hold the title to

1. EASEMENTS: creation, existence, and termination: subsequent unity of title: effect.

the remainder of the quarter section, and the other appellees are purchasers under contract from them. There is no public road to appellant's land. The main road between Fort Madison and Burlington runs diagonally through the land of appellees. The controversy is over a claimed right of way across appellees' land from the public highway to the land of appellant. The following plat shows the general situation and the location of the claimed right of way.

S.E. 1/4 Section. 25 Twp. 69 R 3.

Appellant contends that he is entitled to the right of way in question, (1) as a way of necessity, and (2) by prescription. The appellees insist that appellant has a right of way conveyed by a former owner of the land to a remote grantor of the plaintiff's, leading south from the point where appellant's south line crosses the north and south middle line of the southwest quarter of the quarter section, to the public road; and they deny all claim on his part to the right of way claimed by him.

I. The claim to a right of way of necessity is based on the following facts: In 1852, title to so much of the tract now owned by appellant as lies in the west half of the west half of the quarter section was acquired by Mary E. Parr, and, in 1857, her husband, Christopher Parr, acquired title to so much of such tract as lies in the east half of the west half of the quarter section, from George Chandler, who at that time owned the land between it and the public road. The appellant holds title to the whole tract so held by the Parrs, by mesne conveyances from the trustee of Christopher and Mary E. Parr, and appellees' title is derived from George Chandler.

Appellees' denial of a right of way of necessity is predicated on the contention that, at the time Mary E. Parr acquired her title, she had the right of way above referred to from the southeast corner of her land south to the public road. The record in respect to this road or right of way is as follows: In 1844, one Bailey held title to the west half of the west half of the quarter section, and conveyed to one Currie that portion thereof now belonging to appellant, and by the same deed conveyed "the privilege to construct a road 30 feet wide from the S. E. corner of the tract above conveyed due south until it intersects the road leading from Vance's ferry to Burlington." This is the same public road with which the right of way claimed by appellant connects. Currie, in 1845, conveyed the same tract to Brown, and the latter, in 1846, conveyed it back to Bailey. Neither of these conveyances contained any reference to the right of way previously conveyed by Bailey to Currie.

In 1847, Bailey conveyed so much of the west half of the west half of the quarter section as had not been conveyed by him to Currie, to George Chandler, with no reservation of a right of way thereover. In 1849, Bailey conveyed the same land previously deeded to Currie to one Green, and Mary E. Parr acquired

title thereto by conveyance from Green. Neither of the last mentioned deeds refers to a right of way.

It thus appears that Bailey conveyed a portion of the tract now owned by appellant, and a right of way across other land then owned by him; that he subsequently received a conveyance of the same tract; that he thereafter conveyed the tract over which such right of way had existed,—the servient estate,—without reservation, and later conveyed the tract originally owned and reacquired by him,—the dominant estate,—without mention of the right of way.

It is conceded that, after the conveyance to Currie of the one tract and an easement in the other, the easement ran with the land, and would pass by a conveyance that described only the land. *Cassens v. Meyer,* 154 Iowa 187. It is, however, contended by appellant that, on the reconveyance of the dominant estate to Bailey while he was still the owner of the servient estate, there was a merger, by reason of the unity of title in fee to both tracts in Bailey, with consequent unity of possession and enjoyment, and an extinguishment of the easement. This would be true so long as Bailey continued the owner of both tracts.

"No easement exists so long as there is a unity of ownership, because the owner of the whole may, at any time, rearrange the qualities of the several parts." *Marshall Ice Co. v. LaPlant,* 136 Iowa 621.

But Bailey, by the conveyance to Chandler of the tract in which the easement had existed, severed the dominant from the servient estate. In the case last cited, we further said:

"But the moment a severance occurs, by the sale of a part, the right of the owner to redistribute the properties of the respective portions ceases, and easements or servitudes are created, corresponding to the benefits and burdens mutually existing at the time of the sale. This is not a rule for the benefit of purchasers only, but is entirely reciprocal. Hence, if, instead of a benefit conferred, a burden has been imposed upon the portion sold, the purchaser, provided the marks of this burden are open and visible, takes the property with the servitude upon it."

See, also, *Carrigg v. Mechanics Bank,* 136 Iowa 261; *Teachout v. Duffus,* 141 Iowa 466; *Keokuk E. R. & P. Co. v. Weisman,* 146 Iowa 679.

While the record is not clear as to when the use of the way

from the land now owned by appellant south to the public road began, or whether there were visible evidences of the existence of the way at the time Bailey conveyed the servient estate to Chandler, there are other circumstances from which, we think, it is clear that Chandler took the land conveyed to him burdened with the easement. Obviously, the most important of these circumstances is the fact that the appellees, who derived their title from Chandler, so concede. This alone would seem to meet the objection that, at the time of the conveyance, there were no visible evidences of the existence of the easement. The original grant of the easement by Bailey to Currie was of record. The description of the property conveyed in the deed to Chandler referred to the conveyance to Currie, and to the land therein conveyed as ''Currie's land,'' although it had previously been reconveyed to Bailey. Bailey, after the conveyance to Chandler, had no way over his own land to the public road. There is testimony that this way was in use 50 or 60 years ago. Its use by former owners of the land now belonging to appellant, and by appellant himself, is shown to have been continuous, as occasion required, and to have been without dispute or interference by Chandler, who maintained a gate where the road entered the public highway. Owing to the topography of the land, the fact that a creek had to be forded, and the presence of a sand hill, the use of the road was very largely for the purpose of reaching the south part of the land now owned by appellant, from the public highway. It is doubtless true, as contended by appellant, that the right of way claimed by him lies over better ground, and would afford him a better road to his buildings. But the creek and the sand hill on the road to the south are both on the land owned by appellant, and between the south boundary thereof and his buildings. Work has, from time to time, been done on the road at these points by former owners. So far as appears, there are no natural difficulties or obstructions where the road is on the land of appellees, and it affords good access to appellant's land. It appears from the plat that the south road is on appellees' land for about 300 feet,—one witness said 200 feet,—while the road claimed by appellant traverses the land of appellees in a diagonal and somewhat winding course for over a quarter of a mile, and crosses parts of three 40-acre tracts. The right to a

way of necessity depends, as the term itself shows, on necessity, —not on the mere convenience of the claimant.

It is apparent that, unless Bailey's grantee, Green, and Mrs. Parr had a right of way over the tract conveyed by Bailey to Chandler, they had, as a matter of right, no way of access to their land. We are clearly of the opinion that there was a right of way from the tract owned by Mrs. Parr south to the public road at the time her husband acquired the adjoining tract from Chandler; that this afforded a way from the whole tract owned by them to the public highway; and that the appellant, holding title through the Parrs, is not entitled to another way as of necessity over the lands held by appellees, from Chandler. This conclusion is not in conflict with anything said in *Rater v. Shuttlefield*, 146 Iowa 512. In that case, the land which it was claimed afforded an outlet had been subsequently acquired, and the way so afforded was substantially impassable.

II. The claim of a right of way by prescription has no evidence to support it, other than that of use. It is the contention of appellant that a right of way by prescription was acquired prior to the enactment of Section 2031, Code of 1873 (Section 10175, Code of 1924), requiring adverse possession of an easement to be established by evidence distinct from and independent of its use.

2. EASEMENTS:
   prescription:
   permissive use.

See *Baldwin v. Herbst*, 54 Iowa 168; *McAllister v. Pickup*, 84 Iowa 65; *Ange v. Slitsinger*, 96 Iowa 181. While much use of a roadway substantially on the line as claimed by appellant is shown, beginning at an early date, before the land was fenced, and continuing down to about the commencement of this action, by the proprietors of, and tenants on, the land now owned by appellant, as well as others, upon the whole record it is fairly shown that it was merely permissive on the part of the owners, and not under any claim of right. The appellant testified that he was told, before he bought the land, by Bertleshoefer, one of the prior owners, that Chandler, appellees' predecessor in title, had said:

"You do not need any road. You got one now, to travel as long as I live; and after I am gone, it will go to my ancestors(?), and it will be the same."

Bertleshoefer testified that Chandler had refused to sell him a road, and had said:

"As long as I live, you will have a roadway; but stay as near in one track as you can. When I am gone, I do not think you will have any trouble with Mr. Swiler."

He said that this was what he told appellant. There was other uncontradicted testimony that Root, appellant's immediate grantor, had said, when trying to sell the place, that there was no right of way; that this was told to appellant before he purchased, and he said that was what he understood. There is further testimony that, on one occasion, when appellant was using the south road, he said that Swiler would not "let him go through down there;" that he did not want any trouble with them, and rather than have any trouble, "he would just go around." This was not denied by appellant. He admitted that at one time a lock was put on the gate, and a key given to him. Not only was the use of the road merely permissive on the part of the owners, but it would appear that appellant, both before and after he purchased the land, understood this to be true.

We agree with the trial court, and the judgment is—*Affirmed.*

EVANS, C. J., and STEVENS, FAVILLE, and DE GRAFF, JJ., concur.