Lucelle E. Bray, appellee, v. Earl Hardy et al., appellants.

No. 49182.

(Reported in 82 N.W.2d 671)

795

MAY 7, 1957.

J. Allen Orr, of Sioux City, for appellants.

W. A. Dutton, of Sioux City, for appellee.

THOMPSON, J.—We are here concerned with a claim of an easement by implied reservation. Plaintiff's petition first pleaded that the easement arose by prescription; but, since only a sidewalk for foot traffic was involved, she was immediately confronted by section 564.3, Code of 1954, which provides that no right of footway shall be acquired by prescription or adverse possession. Thereupon she mended her hold, and by an amendment to her petition pleaded, in effect, that the easement arose by implication. The trial court so held, and we think its decree and judgment, which enjoined the defendants from obstructing the walk, were in all respects correct.

In 1916 Sadie and Elias Solomon were the owners of all of Lot 4, Block 96, Sioux City East Addition to the City of Sioux City. About that time they improved the property by moving

the house which stood on the front part of the lot abutting upon Iowa Street to the rear, and by building a new house upon the front. At the same time they built six concrete steps from Iowa Street, which runs along the west side of Lot 4, to the top of the terrace and from these steps constructed the three-foot concrete sidewalk now in controversy, running across the lot near its south line easterly to the old house in the rear. A gravel alley runs along the south side of the lot, and a paved alley along the east side. The sidewalk so constructed has been in place and was used at all times by the occupants of the rear house, now owned by the plaintiff, until it was obstructed by the defendants in 1956. There is no connecting walk between this sidewalk and the house on the front of the lot which is now the property of the defendants, although it runs across that part of Lot 4 now owned by them.

The property went to tax deed in 1932. In 1945 the entire lot came into the ownership of Carl E. Anderson and Lottie H. Anderson, husband and wife. On November 28, 1950, these owners conveyed the west 69 feet of Lot 4 to Whiteheads, who conveyed to Byrnes, who on May 5, 1954, sold it by contract to the defendants. The Andersons retained the remainder of the lot, which included the house served by the sidewalk in question; and apparently they lived there until they sold and conveyed it to the plaintiff on October 19, 1955. There was no trouble between the Andersons and any of the owners of the front or west 69 feet of the lot about the use of the sidewalk; it remained open and unobstructed at all times until the purchase of the property by the plaintiff. But shortly thereafter defendants claimed the right to close the walk and did so by a woven-wire fence and a padlocked gate. The walk is upon and across the entire width of defendants' westerly portion of Lot 4 and runs directly to plaintiff's house on the rear or easterly part of the lot.

I. It is apparent that the easement here, if one in fact exists, arises through implied reservation rather than by implied grant. The part of the lot which the Andersons sold first was that which must be the servient estate, and they retained the dominant one. They conveyed to defendants' grantors in chain of title by full warranty deed with no express reservations; and

whatever these grantors, remote and immediate, received by this deed the defendants now have. It is urged by them that, since the plaintiff received no more than the Andersons had, and they could not be permitted to claim in derogation of their own deed, the plaintiff likewise cannot be heard to say that anything was reserved. The contention is plausible, but in view of the many decided cases is unsound.

██ ██ A reservation of an easement will be less readily implied than a grant thereof. Restatement, Property, section 476. But they have, nevertheless, often been implied. An easement by implication upon severance of the unity of ownership in an estate arises when these factors appear: 1, a separation of the title; 2, a showing that, before the separation took place, the use giving rise to the easement was so long continued and obvious that it was manifest it was intended to be permanent; and 3, it must appear that the easement is continuous rather than temporary, and that it is essential to the beneficial enjoyment of the land granted or retained. 17 Am. Jur., Easements, section 34, page 948.

We have stated what is perhaps the essence of the foregoing tests in Starrett v. Baudler, 181 Iowa 965, 977, 165 N.W. 216, 219, L. R. A. 1918B 528, in these words: "The rule is well established that an easement in land conveyed is never to be implied in favor of that retained by the grantor unless the burden thereof is apparent, continuous and necessary."

██ The question of the right of the grantor to derogate the title he passes is answered in the same case, page 980 of 181 Iowa, page 220 of 165 N.W., in these terms: "Where the conveyance of the so-called servient estate is complete and absolute on its face, its very terms exclude all other interest therein, and there can be no derogation of the title thus passed, *save when the estate retained is permanently so improved as that to deprive it of an easement in that conveyed would render impossible its full use and enjoyment in that condition."* (Italics supplied.)

We have recognized the rule in Loughman v. Couchman, 242 Iowa 885, 888, 47 N.W.2d 152, 154; Dyer v. Knowles, 227 Iowa 1038, 1043, 289 N.W. 911; Feilhaber v. Swiler, 203 Iowa 1133, 1136, 212 N.W. 417; and LaPlant v. Schuman, 197 Iowa

466, 470, 471, 196 N.W. 280, and have applied it in numerous cases, including Starrett v. Baudler, supra; Kane v. Templin, 158 Iowa 24, 28, 138 N.W. 901; Teachout v. Duffus, 141 Iowa 466, 468, 119 N.W. 983; and Marshall Ice Co. v. LaPlant, 136 Iowa 621, 630, 111 N.W. 1016, 1019, 12 L. R. A., N. S., 1073. In the latter case Judge Ladd used this significant language:

"This is not a rule for the benefit of purchasers only, but is entirely reciprocal. Hence if, instead of a benefit conferred, a burden has been imposed upon the portion sold, the purchaser, provided the marks of this burden are open and visible, takes the property with the servitude upon it."

Other jurisdictions have adopted the same principle. Mitchell v. Castellaw, 151 Tex. 56, 246 S.W.2d 163, 167; Johnson v. Headrick, 34 Tenn. App. 294, 237 S.W.2d 567, 569, 570; Freiden v. Western Bank & Trust Co., 72 Ohio App. 471, 50 N.E.2d 369, 371, 372; Sieger v. Riu, 123 Conn. 343, 195 A. 735, 737; Bihss v. Sabolis, 322 Ill. 350, 153 N.E. 684, 53 A. L. R. 907; Jack v. Hunt, 200 Ore. 263, 264 P.2d 461, 463, 464; Owsley v. Hamner, 36 Cal.2d 710, 227 P.2d 263, 24 A. L. R.2d 112.

■ II. The facts in the case at bar bring it clearly within the rule above expressed. The walk was first laid down solely for the benefit of the house at the rear of the lot. It in no way served the house on the front or westerly 69 feet, now owned by the defendants. While the defendants claim that any rights to an easement were lost by the tax sale of 1932, it appears that there was unity of ownership in the Andersons at least from 1945 until their sale to defendants' remote grantors, the White-heads, in 1950. In fact, there is no showing that there was ever a severance of the unity of ownership from 1916 until the conveyance of 1950. In any event, unity in the Andersons before the severance by the Whitehead conveyance is undisputed. So the first requirement for the application of the rule set out in Division I above is fully met. There was a separation of the title by the deed to Whiteheads of the west 69 feet of the lot, the Andersons retaining title to the remainder.

The second condition, that the use was so long continued and obvious that it is manifest it was intended to be permanent, likewise seems to be established beyond fair argument. The walk, with the steps leading up the terrace from Iowa Street to it, had

been there since 1916. It served only the rear property and those living there. It was not connected with any walk leading to the front house. It had been in daily and frequent use at all times. It was there on the lot, at the time of the sale to Whiteheads, plainly to be seen. It was built of concrete, and intended to be permanent.

As to the third requirement, there can be no doubt that the easement was continuous rather than temporary. It is also a part of this requirement that the easement must be essential to the beneficial enjoyment of the land retained by Andersons. This calls for a somewhat more extended discussion.

A minority of courts follow the rule that an easement by implied reservation may not be established unless it appears that such easement is strictly one of necessity. 28 C. J. S., Easements, section 34, pages 694, 695. It would seem, under these authorities, that an easement such as the one claimed here could be upheld only if it met the requirements of a way of necessity. But we need not take time or space to analyze these authorities. This court has consistently followed the more liberal rule, expressed in Starrett v. Baudler, supra, at page 980 of 181 Iowa, page 220 of 165 N.W. The rule recognized here is that there must be a reasonable necessity, as distinguished from mere convenience. What is required is that the easement must be reasonably essential to the use and enjoyment of the dominant estate as it existed at the time of the conveyance of the servient portion. We said in Kane v. Templin, supra, at pages 27, 28 of 158 Iowa, page 902 of 138 N.W.: "* * * an easement by implication is a different thing from an easement by necessity, as the latter term is properly used."

Whether an easement by implied reservation is created is primarily a question of the intent of the parties. But this is held to be inferred by the circumstances of the transaction. Restatement, Property, Servitudes, 2972, Creation, section 474. Some of the important considerations governing the determination of whether an easement by implied reservation has been created are set out in Restatement, Property, Servitudes, 2977, Creation, section 476. Among the more important of these are the terms of the conveyance, the extent of necessity of the ease-

ment to the claimant, the manner of use prior to the conveyance, and the extent to which the use was visible and known to the parties. The rule of strict necessity is discussed and rejected in Johnson v. Headrick, 34 Tenn. App. 294, 237 S.W.2d 567, Jack v. Hunt, 200 Ore. 263, 264 P.2d 461, and Owsley v. Hamner, 36 Cal.2d 710, 227 P.2d 263, 24 A. L. R.2d 112, all supra.

In the case at bar, while the plaintiff's property would not be rendered entirely untenantable by a denial of use of the walk, it is apparent that its use is reasonably essential to a full enjoyment. The only other means of reaching the plaintiff's property is by use of the two alleys upon which it abuts. Alleys are not ordinarily thought of as sufficient ways for foot traffic, at least, in reaching houses. There is evidence that the walk in question was used frequently and almost exclusively by pedestrians having business with the residents in plaintiff's property, or in making social calls. The postman testified that he could not deliver mail there except by use of the walk, since the south alley was not paved and postal regulations require that there must be a sidewalk to the property where mail is delivered. He could have used the paved alley to the east except that it was not on his route. Since the installation of the fence across the walk he had been delivering mail to the plaintiff's home by squeezing through a small gap of ten or eleven inches between the end post and the wall.

There is no way of reaching plaintiff's front door except by this walk. We think there is no doubt that the walk is reasonably necessary for the use of her property as it was improved at the time of the separation of title by the Whitehead conveyance, within the meaning of the rule established and followed by this court. All of the requirements laid down in Division I above are met by the facts in this case.

III. The defendants urge repeatedly that section 564.3, supra, prevents the establishment of any easement for a footpath. There is no merit in this contention. The section cited means only that there can be no easement in such a way by prescription or adverse possession. It in no manner prohibits an easement by implication.

■ IV. It is also contended that plaintiff in some manner lost her right to claim an easement by implication by attempting to get a firm commitment for the use of the path, at the time she bought the rear part of the lot. We see no force to this. In fact, a written agreement would have been a commendable precaution. It would have prevented the present litigation. But her efforts to save any possibility of further difficulties did not eliminate the easement already existing. The right to such an easement is measured by the condition existing at the time of the separation of ownership. In the instant case, an easement existed at all times after the conveyance by Andersons to Whiteheads, and was not lost by lack of knowledge of her rights on the part of the plaintiff or by an attempt on her part to avoid misunderstandings or litigation. The intent to grant or reserve an easement by implication must be determined as of the time of the severance of the unity of ownership. 28 C. J. S., Easements, section 31.

■ V. Again, defendants urge that there is no showing of any dedication of the sidewalk to the public use. This contention arises from the use by the plaintiff of the word "dedication" in referring to her claim of easement. However, we think the amendment sufficiently pleads an easement by implied reservation. No dedication to public use is necessary if facts showing an implied easement are pleaded and proven.

■ VI. Finally, it is argued that plaintiff's pleading sets up a case based upon the building of the walk by the Solomons and so claims an easement running back to their ownership; and that this was destroyed by the tax deed of 1932. But the amendment to petition sets up the unity of ownership of the Andersons and its severance, long after the tax sale. Defendants' contention at this point also lacks merit.

We think the case was properly determined by the trial court.—Affirmed.

All JUSTICES concur.