# IN THE COURT OF APPEALS OF IOWA

—————————————

No. 25-0250
Filed February 11, 2026

—————————————

**Ryan Lutze,**
Petitioner/Counterclaim Respondent-Appellee,
v.
**Tony L. Seitz and Rebecca A. Seitz,**
Respondents/Counterclaim Petitioners-Appellants.

—————————————

Appeal from the Iowa District Court for Allamakee County,
The Honorable Alan T. Heavens, Judge.

—————————————

**REVERSED AND REMANDED**

—————————————

Abram V. Carls (argued), and Joseph J. Porter of Simmons Perrine Moyer
Bergman PLC, Cedar Rapids, attorneys for appellants.

Jeremy L. Thompson (argued) of Thompson Casper, P.L.L.C., Decorah,
attorney for appellee.

—————————————

Heard at oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Schumacher, J.

**SCHUMACHER, Judge.**

Tony and Rebecca Seitz appeal an order recognizing an easement by implication on their property for ingress and egress to Ryan Lutze's neighboring property. Because an easement was neither continuously and obviously used nor reasonably necessary at the time the parties' properties were separated, the district court erred in granting Lutze's claim for an easement by implication and Lutze's claim for an easement by necessity also fails. Accordingly, we reverse and remand to the district court for further proceedings.

## BACKGROUND FACTS AND PROCEEDINGS

In April 2001, Jason Brink purchased a 159-acre property in rural Allamakee County. Brink divided the property "in two pieces"—a 17-acre "old-building-site area" with a few dilapidated foundations and a 142-acre "tillable-woods area" with timber, grasses, and hunting ground.

In September 2001, Brink sold the smaller parcel to Seitz.[1] Seitz, who lived nearby in Lansing, wanted to build a house "in the country." Seitz's property is legally described as "Lot 1 of the Northeast Quarter of the Northwest Quarter and Lot 1 of the Northwest Quarter of the Northwest Quarter of Section 11, Township 98 North, Range 4 West of the 5th P.M., in Allamakee County, Iowa."

In April 2004, Brink sold the remaining, larger parcel to Lutze.[2] Lutze, who lived in Minnesota, did not intend to build a house on the property.

---

[1] For simplicity, references to "Seitz" include the Seitzes collectively and Tony Seitz individually.

[2] Lutze purchased the property on an installment contract and took immediate possession. He received a warranty deed in 2008 upon fulfillment of the contract.

Instead, he planned to use it for recreational purposes, including hunting.[3] When he purchased the property, Lutze understood it was priced favorably compared to other properties, "maybe by ten percent," due to a "potential access issue."[4] Lutze's property is legally described as:

> The West Half of the Northeast Quarter; the Northeast Quarter of the Northwest Quarter except Lot 1 therein; Lot 1 of the Southeast Quarter of the Northwest Quarter; Lot 1 of the Northeast Quarter of the Northeast Quarter; and Lot 1 of the Southeast Quarter of the Northeast Quarter, all in Section 11, Township 98 North, Range 4 West of the 5th P.M., in Allamakee County, Iowa.

On the map below, Seitz's property ends in *0009 and Lutze's property ends in *0010.



---

[3] Lutze later began farming some areas, and he also enrolled grounds in the Conservation Reserve Program.

[4] Lutze did not speak with Brink about an easement or access to the property.

Both properties abut Schaffer Hollow Road, a public roadway. In 2001, when Seitz purchased his property, a deep ditch with "an old wood-plank bridge" separated Seitz's parcel from Schaffer Hollow Road, and a thin "rock path" led into the western side of the property. According to Seitz, "from there on you couldn't get up" into the rest of his property because "eight, ten feet deep," "washed out" gullies prevented further travel. He described his property as a valley, with different pieces of ground coming together.

The next spring, Seitz borrowed a bulldozer and with the help of a neighbor, he moved dirt across the ditch to make "a way to get in there" so he could start preparing the ground for a concrete crew to pour a foundation for his home. After consulting with a foreman from the bridge company he worked for, Seitz installed a beam to "prop up" the old wood bridge to get small loads of concrete across it.[5]

Later in 2002, Seitz hired a crew to have more bulldozing done to reshape and level his property because, due to "the way it was washed out," he couldn't access fields on the other side. As Seitz explained, "So we had [a bulldozer] come and kind of level it out a little bit so we could get up and access this property" to "cut hay" and "put food plots in." The excavation created a path northeast from Seitz's home to the "corner post" where the northeast corner of Seitz's parcel met the northwest corner of Lutze's future parcel, as shown by the arrow in the picture below.

---

[5] Seitz acknowledged "it cost us a lot more because they were more trucks coming, but that's all we could get across it at the time." According to Seitz, three or four years later, "the county came in and replaced [the bridge]" with a steel culvert after Seitz was "on them about it because it was pretty rickety."



After Seitz completed the leveling, Brink first accessed his remaining parcel through Seitz's property, using the corner-post path. According to Seitz, over the next few years, Brink used the path "once or twice" to "do a little bit of hunting" on the other parcel, and he invited Seitz to join his hunting group.

As noted, Lutze purchased his property in 2004. Lutze used the corner-post path to get to his property, which Seitz viewed as a neighborly "trade" because Lutze sometimes allowed Seitz to hunt on his property. Seitz noticed that as Lutze started using the corner-post path "more and more," he left "ruts going up the hill." Meanwhile, Seitz also had a problem with rock getting washed out and "ruts were coming down [his] driveway." So around 2008, Seitz decided to regrade his property again, building terraces to control ruts and water runoff. At that point, the corner-post path was removed and Seitz rerouted a new grassy path in his yard southeast around his home toward Lutze's parcel, as shown by the arrow below. That path remains in place today and is the subject of this appeal.



E-FILED 2024 SEP 27 11:36 AM ALLAMAKEE - CLERK OF DISTRICT COURT

After the new path was created, Lutze constructed a shed on his property, located near the entrance of the path to his property. Lutze used the shed for hunting trips and storage. [6]

In 2010, Lutze hired a forester, Mark Webb, to advertise and sell timber from his property. Webb's advertisement of Lutze's property required that a logging road be constructed along Lutze's property "further down the main road" in order to remove logs. In 2011, a timber sale took place, and the successful bidder built a logging road connecting to Schaffer Hollow Road to remove trees from Lutze's property. Webb described the road as "basically a diagonal road across the hill and down," "[j]ust wide enough for a—say a straight truck or what we call a pre-hauler in the timber industry, dual

---

[6] The zoning administrator testified that the building and holding tank built by Lutze do not have an approved permit, as Lutze did not make application with the county prior to building the same.

wheels," but "not big enough for a semi." Webb also believed "a tractor, maybe a narrow plow or disc would make it up and down."

After the logging road was put in, Lutze continued to use Seitz's path to access his property. Lutze testified he helped maintain the path on Seitz's property by spreading "seed on there" and he used some crushed rock "to reenforce [a] low spot."

The neighborly relations changed in early 2023, when Lutze started having "all these people" to his property. Seitz also stated that Lutze used the path when it was wet, which "destroy[ed] it." At that point, Seitz informed Lutze that he could no longer use the path through his yard. Lutze presented Seitz with a proposed agreement for an ingress/egress easement, which Seitz ignored. Lutze also offered "maybe doing a land swap so we could trade a couple acres and allow me to get a driveway going up there." Lutze then initiated this action by filing a petition to establish an easement by implication or necessity "for ingress/egress on and over [Seitz's] driveway and real estate." Seitz filed an answer challenging Lutze's claims and counterclaiming to quiet title to his property.

Meanwhile, the extra traffic on Seitz's path coincided with Lutze's decision to sell his property. Lutze hired Nicholas Hopp, an agricultural and recreational land broker, to auction the land. After Seitz refused to allow Hopp to bring potential bidders through his yard, Hopp learned there "wasn't a legal easement." Although Lutze's parcel assessed for over $1.1 million and Hopp received "[f]airly strong interest" prior to the auction, the highest bid it received was "about $350,000 short of that." Lutze believed "it was the easement question that was resulting in the drop in value" and decided not to proceed with the sale.

The case proceeded to a bench trial, during which the court received numerous exhibits and heard testimony from the parties and other witnesses. Ultimately, the court declared an easement in favor of Lutze over Seitz's property and dismissed Seitz's counterclaim. In its order, the court focused on Lutze's easement-by-implication claim, agreeing with Lutze that Seitz's driveway was "the only reasonable way that Lutze can enjoy his property." The court further found that "[t]o the extent that Iowa law allows Lutze, as a remote grantor, to make a claim for an easement by necessity, Lutze has established all elements of that claim by clear and convincing evidence as well." The court ordered that "Lutze may create and record a plat of survey of this permanent ingress and egress easement at Lutze's expense."

Seitz filed a motion to reconsider, enlarge, or amend, pursuant to Iowa Rule of Civil Procedure 1.904(2), and the court entered an order clarifying its ruling against Seitz in several respects. Seitz appeals.

## STANDARD OF REVIEW

This matter was tried in equity, so our review is de novo. Iowa R. App. P. 6.907; *Myers v. Myers*, 955 N.W.2d 223, 229 (Iowa Ct. App. 2020). Our job is to "examine the entire record and adjudicate rights anew on the issues properly presented." *Alcor Life Extension Found. v. Richardson*, 785 N.W.2d 717, 722 (Iowa Ct. App. 2010). We give weight to the district court's factual determinations, especially concerning witness credibility, but they do not bind us.[7] *Myers*, 955 N.W.2d at 229.

---

[7] As Lutze points out, Seitz's brief "spends a considerable amount of time attacking Brink's testimony and credibility in arguing that the District Court erred in relying upon it," but "credibility is for the factfinder." Indeed, "[w]ith de novo review, we are able to consider the entire record and formulate our own conclusions." *Easton-Cole v. Williamson*, No. 22-0734, 2023 WL 2671910, at *1 (Iowa Ct. App. Mar. 29, 2023).

## DISCUSSION

"There are four ways to create an easement: (1) by express grant or reservation, (2) by prescription, (3) by necessity, and (4) by implication." *Nichols v. City of Evansdale*, 687 N.W.2d 562, 568 (Iowa 2004). Lutze has not claimed an easement by written grant or prescription. Rather, his claim is based solely on rights he maintains arose either by implication or necessity. Because the district court focused on Lutze's easement-by-implication claim, we start there.

## I.    Easement by Implication

"An easement by implication is one which the law imposes by inferring the parties to a transaction intended that result, although they did not express it." *Brede v. Koop*, 706 N.W.2d 824, 830 (Iowa 2005) (quoting *Schwob v. Green*, 215 N.W.2d 240, 242–43 (Iowa 1974)). It arises under the following conditions:

> (1) a separation of the title; (2) a showing that, before the separation took place, the use giving rise to the easement was so long continued and obvious that it was manifest it was intended to be permanent; and (3) it must appear that the easement is continuous rather than temporary, and (4) that it is essential to the beneficial enjoyment of the land granted or retained.

*Id.* (citation omitted). Relating to the fourth element, our supreme court has observed that "[a]n easement is 'essential' when it is reasonably necessary, as distinguished from being merely convenient." *Id.*

Here, the district court found there was "no real dispute over the first three elements," and "[t]he fourth element is the pivotal one." On that element, the court concluded that Lutze's use of Seitz's driveway and path was reasonably necessary to the beneficial enjoyment of his property. In reaching that conclusion, the court rejected the idea that "Brink could have

9

built an access road off Schaffer Hollow Road," despite having one-half mile of road frontage. The court reasoned, "Brink wouldn't think of doing that because he already had a perfectly fine access road [on Seitz's property] which he was expecting to have going forward." The court acknowledged that a logging access road was later added to Lutze's frontage but found it was "too narrow for modern-day farm equipment." Finally, the court found that necessary modifications to the access road's slope gradient were "prohibit[ed]" by an Allamakee County bluffland protection ordinance and a "discretionary variance" would be needed before such modifications could be made.

Although the court did not elaborate much on the other elements, relating to the second element of whether the use of the alleged "easement was so long continued and obvious before 2001 that it was manifest it was intended to be permanent," the court found:

> Jason Brink testified credibly about how he and his invitees used the property from 2001 to 2004, and Brink made no distinction on how the easement area was used between before September 2001 and after September 2001 when title was severed. The frequency, extent, and character of the entire time of pre-existing use is the same as the frequency, extent, and character of the post-existing use.

An inherent problem with these findings is that they mainly depend on facts and circumstances that occurred after the time a viable easement-by-implication claim arose. "Whether an easement by implied reservation is created is primarily a question of the intent of the parties," which is "to be inferred by the circumstances of the transaction." *Bray v. Hardy*, 82 N.W.2d 671, 674 (Iowa 1957). In other words, "[t]he intent to grant or reserve an easement by implication must be determined *as of the time of the severance of the unity of ownership*." *Brede*, 706 N.W.2d at 830 (emphasis added) (citation omitted). And "[a] reservation of an easement will be less readily implied

10

than a grant thereof." *Bray*, 82 N.W.2d at 673. Upon our review, we cannot find by clear and convincing evidence a showing of any of the necessary elements aside from separation of title.[8]

Relating to the second element, the evidence shows that Brink could not have intended to reserve an ingress/egress easement over a path or other access way through Seitz's property because no such access existed at the time Brink separated the properties. Seitz's wife, Rebecca, testified that when she and Seitz walked the property, it was "overgrown" and "washed out." Rebecca testified there was no way anyone "could get a vehicle up into Mr. Lutze's property . . . when [they] purchased it back in 2001." Seitz testified that the "rock path" leading into the property ended on the western side of the parcel and he was unable to get to his fields on the other side of his property until "sometime in 2002"—after he built his home and subsequently bulldozed, leveled, and reshaped the surrounding grounds. According to Seitz, it was only then that Brink "started" using the new corner-post path to access the other parcel.

Brink's testimony on this point was no more availing. Brink stated that he purchased his property for "[m]ainly hunting" and "to resell down the road." He maintained that he couldn't remember looking at the property when he bought it in April 2001, but "obviously" he did. Brink only had title to both properties for five months. During that time, Brink couldn't recall how many times he was on Seitz's parcel specifically, but he "thought they

---

[8] Because Brink had unity of ownership of the properties for five months in 2001, the first element was established. *See Fink v. Lawson*, No. 23-1845, 2025 WL 407303, at *3 (Iowa Ct. App. Feb. 5, 2025) (observing "an entity must first have unity of ownership of the properties to then be able to separate the titles"), *vacated on other grounds by*, *Fink v. Lawson*, ____ N.W.3d ____, 2026 WL 70528 (Iowa 2026).

probably did some cleanup." Brink thought he rented Lutze's parcel to a farm tenant at some point, but he couldn't remember. Brink also didn't recall how a farm tenant would have accessed Lutze's parcel; he acknowledged they could have "came through a neighbor's field or something of that nature."

Brink's vague testimony does not support a finding that he was on Lutze's parcel on any instances during that same period. And given the timing of hunting seasons, Brink agreed he was not on the property to deer hunt between April and September 2001 (which, according to Brink, would have required access through Seitz's property to reach the farther parcel), and he didn't "know if turkey season's in there or not." In short, there is no evidence that anyone used a path through Seitz's parcel to access Lutze's parcel during the five months Brink owned both properties. *See Fink*, 2025 WL 407303, at *4 (finding the plaintiffs could not establish the second element for an easement-by-implication claim, because there was "no evidence that anyone used the path from lot 21 cutting through lots 19 and 20 during the forty-six days" of mutual ownership); *Gibson v. Hatfield*, No. 09-1918, 2010 WL 5394445, at *6 (Iowa Ct. App. Dec. 22, 2010) (finding the plaintiff presented "no evidence regarding the activities giving rise to beneficial enjoyment on the rear portion of [her] land nor evidence establishing the necessity of the [gravel road] easement prior to the separation" of the properties).

Moreover, specifically relating to intent, Brink stated he had "a lot of different properties [he'd] bought and sold" over the years. He did not recall whether there was an easement on Seitz's, although he "would have thought there would have been." However, given his familiarity with real estate, he agreed that if he "intended to reserve an easement," "that's something you do in writing." Indeed, a survey of the two properties prepared for Brink in

12

July 2001 showed "[n]o easements besides the county road, Schaffer Hollow Road easement." At best, Brink's "testimony was ambiguous with respect to his intent to create an easement," and it "fell short of establishing an intent to create an easement." *See Gibson*, 2010 WL 5394445, at *6.

Although Lutze's claim fails on the second element,[9] we also address the fourth element, as our analysis also implicates Lutze's easement-by-necessity claim. Here, Lutze's property had one-half mile of frontage on a public roadway—more frontage than Seitz's property. In short, Lutze's property was not landlocked; there were ways to reach the property other than through Seitz's property. *Compare Brede*, 706 N.W.2d at 831 (finding the defendants had not reserved a driveway easement despite knowing the plaintiff's property would become landlocked because they had contracted to provide for an access easement "along the eastern edge of the parcel") *with Bray*, 82 N.W.2d at 675 (determining an established sidewalk over the defendant's property was reasonably necessary for the use of the plaintiff's property because "[t]here is no way of reaching plaintiff's front door except by this walk").

Inconvenience or expense is not the type of "necessity" that shows Brink intended to reserve an easement. *See Schwob*, 215 N.W.2d at 244 (acknowledging "it would be both inconvenient and expensive to provide access" to public roads on either side of the defendant's property, "but mere inconvenience or expediency is not the sort of 'necessity' which permits a finding the parties must therefore have intended to grant such an easement").

---

[9] Coupled with this determination, we also conclude the evidence does not support the third element—that the easement was continuous rather than temporary.

Indeed, Lutze admitted he could have alleviated his "access problem" by constructing a driveway directly to his property at the time he purchased it:

> Q. You acknowledge you could have put an access point off Schaffer Hollow Road after you took possession in 2004? A. It would have been cost prohibitive, but legally, with the county permission, I believe I could have.
>
> Q. When you say "cost prohibitive," what do you mean by cost prohibitive? A. That the estimates at the time would have been probably around 20 percent of the overall purchase price of the property. Not something I was able to afford.
>
> Q. The estimates that you're talking about were estimates that you gave yourself; correct? These are not estimates that you sought professionally? A. Yeah. I believe the culvert I got a $15,000 for two-culvert estimate at the time, and then the rest I was just able to factor in dozer time and gravel cost and things like that, yep.
>
> Q. And certainly something that you could have done; correct? A. Legally, yes.

As an aside, we observe that in 2011, Lutze gained access directly to his parcel via the logging road. Although some of Lutze's witnesses testified that the logging road, as currently constructed and maintained, was not a "suitable primary access point" for Lutze's property, they did not dispute the fact that the road allowed ingress to and egress from the parcel. Even Lutze agreed the logging road provided access to the "top of the hill," which opened up to the rest of his parcel:

> Q. You're also not disputing your ability to access your property along Schaffer Hollow Road; correct? A. What do you mean by "access"?
>
> Q. You can get onto your property—A. Yes.
>
> . . . .
>
> Q. And you're not disputing that there is an existing driveway today that will get you from the bottom of Schaffer Hollow Road—from

Schaffer Hollow Road to the hilltop on your property; correct? A. Just disputing that it wasn't intended to be a driveway. It's a logging road that does connect the road to the property.

Q. Can you drive on it? A. Rarely, but yeah.

Q. It's a way to drive; correct? A. Correct.

Finally, we are not persuaded by Lutze's reliance on the county's bluffland protection ordinance or other zoning restrictions as precluding access to his property. Lutze admitted he "ha[d]n't had any of [his] property surveyed to see if it all falls within the bluffland protections." And the ordinance was enacted in 2008, years after the relevant timeframe for establishing an easement by implication. Lutze cannot rely on post-property-separation developments, changed circumstances, or current needs to establish an implied easement. Rather, the evidence centers on the circumstances at the time of property separation. *See Brede*, 706 N.W.2d at 831. Moreover, Lutze agreed he had not submitted any zoning-related application to the county engineer or the county board of adjustment. Nor had his property been surveyed to determine whether it fell within the bluffland protected area. In sum, Lutze has not proven an easement by implied reservation. *See id.*

## II.  Easement by Necessity

The district court also found Lutze had established an easement by necessity. "An easement by necessity is a form of implied easement, but it is separate . . . ." *Nichols*, 687 N.W.2d at 568 (internal citation omitted). "One significant difference is that an easement by implication requires a showing the parties intended such a right to exist. An easement by necessity involves no such intent." *Schwob*, 215 N.W.2d at 244; *see also Nichols*, 687 N.W.2d at 568–69 (listing the elements of both claims).

To establish an easement-by-necessity claim, the claiming party "must establish: (1) unity of title to the dominant and servient estates at some point prior to severance, (2) severance of title, and (3) necessity of the easement." *Nichols*, 687 N.W.2d at 568. This doctrine "is most commonly applied when a landowner parcels out a landlocked portion of his or her land and conveys it to another." *Id.*; *see JP Morgan Chase Bank v. Nichols*, No. 12-0301, 2013 WL 85779, at *3 (Iowa Ct. App. Jan. 9, 2013) ("Where there is a conveyance of a landlocked portion of a larger tract of land, which has access to a public road, the courts find there was implied in the conveyance an easement by necessity so as to permit the owner of the landlocked portion access to his or her land.").

The district court acknowledged "an extra challenge" to this claim, namely, that Lutze was not an immediate party to the transaction. *See Schwob*, 215 N.W.2d at 244 (Iowa 1974) (distinguishing easement-by-implication and easement-by-necessity claims and noting "[a]n easement by necessity ordinarily may not be claimed by any except the immediate parties to the transaction"). In *Schwob*, the court found that "[u]nder that rule," the defendant's easement-by-necessity claim to an access road "would fail," because he purchased his parcel two years after the property was separated. *Id.* More recently, however, a panel of this court characterized *Schwob*'s remote-grantee statement as "not controlling" "dicta," because the *Schwob* court had already found an easement by necessity could not exist because the property at issue had access to a public road. *See JP Morgan Chase Bank*, 2013 WL 85779, at *4–5. We can avoid the lack of clarity on that question for the same reason.

Here, it is undisputed that Lutze's property has access to Schaffer Hollow Road, a public roadway. Accordingly, "there was no need to establish

an easement by necessity." *Id.* at *5; *Kroeze v. Scott*, No. 07-0995, 2008 WL 680748, at *3 (Iowa Ct. App. Mar. 14, 2008) (concluding an easement by necessity was not shown because the plaintiffs "have access by foot or tractor to their property"). *But see Poweshiek Twp. v. Robert F. Gannon Separate Prop. Tr. Dated Dec. 10, 2015*, No. 20-0297, 2021 WL 3073771, at *8 (Iowa Ct. App. July 21, 2021) (finding an easement was necessary because it provided the only access for the public to the cemetary). Accordingly, Lutze has not proven his claim by clear and convincing evidence.

## DISPOSITION

Because an easement was neither continuously and obviously used nor reasonably necessary at the time the parties' properties were separated, the district court erred in granting Lutze's claim for an easement by implication and Lutze's claim for an easement by necessity also fails. Accordingly, we reverse the order establishing an easement on Seitz's property for ingress and egress. We remand to the district court for entry of an order quieting title in favor of Seitz.

**REVERSED AND REMANDED.**